UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re:* | Case No. 13-MD-2450 (KMK) |
| *Ford Fusion and C-MAX Fuel Economy Litigation* | CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |
| *This Document Relates to All Actions.* | |

## INTRODUCTION

1.     This consumer fraud class action is based on Defendant Ford Motor Company's ("Ford" or the "Company") false and misleading advertising campaign regarding the fuel economy of certain 2013 model-year hybrid vehicles.

2.     Until this past year, Ford's efforts to break into the burgeoning market for hybrid vehicles had been largely unsuccessful. Ford's primary hybrid offering, the first generation Ford Fusion Hybrid, which was launched in model year 2010, was marketed as achieving 41 miles per gallon ("MPG") in the city and 36 MPG highway, for a combined 39 MPG—well below the market-leading Prius, which offered 51 city and 48 highway for a combined 50 MPG. Consequently, the fuel economy of this Ford Fusion Hybrid was not high enough to convince most potential customers to pay several thousand dollars more for a hybrid vehicle (also known as the "hybrid premium").

3.     As of mid-2012, Ford held only 3% of the hybrid market. But with the 2013 model year, Ford launched a massive and misleading advertising campaign designed to convey to the auto-buying public that two of its new 2013 hybrid models—the all new second generation Fusion Hybrid and the C-MAX—had made a quantum leap in fuel economy and now delivered 47 city, 47 highway and 47 MPG combined. Ford's "47 MPG" message was broadcast nationwide through a Times Square "47" kick-off, a "47 Challenges for 47 Days" multimedia event, national television commercials, widespread magazine and newspaper advertisements, and coordinated use of social media.

4.     Ford's advertising campaign was a tremendous success, triggering month after month of record hybrid sales for the company. For Prius drivers, Ford's new 47/47/47 MPG figures offered the promise of a more powerful, roomier American made vehicle which nonetheless could achieve fuel economy comparable to the Prius. And for (i) loyal Ford customers, (ii) car buyers committed to support the American auto industry, and (iii) others driving less fuel-efficient vehicles,

the 2013 Ford Fusion Hybrid and the C-MAX offered enough of a bump in fuel economy to justify the hybrid premium. By the end of 2012, Ford's share of the hybrid market had increased more than five-fold, rocketing from 3% to 16% within months of Ford's introduction of the 2013 Fusion Hybrid and the C-MAX vehicles and the massive advertising campaign touting their class leading fuel economy. By April 2013, Ford was the second-leading auto company in the hybrid market, boasting that more and more Toyota and Honda customers were trading in their vehicles for Ford hybrids. In August 2013, Ford achieved its 11th consecutive month of record hybrid sales on the strength of its vaunted "47 MPG."

5.      The problem for consumers was that Ford's "47 MPG" advertising campaign was highly misleading, as the fuel economy of the 2013 Fusion Hybrid and C-MAX vehicles were no better than the Company's prior hybrid offerings. Outside of the laboratory, under real-world driving conditions, consumers who purchased a 2013 Fusion Hybrid or C-MAX hybrid found themselves consistently unable to get anywhere near the advertised 47 MPG. Ford knew that its 2013 Fusion Hybrid and C-MAX could not deliver 47 MPG under real-world driving conditions, and Ford has now acknowledged as much, but only after the 2013 model year is almost over and after Ford achieved the record sales it hoped to achieve through its misleading advertising campaign.

6.      Additionally, Ford has now conceded that the MPG figures repeatedly advertised for the C-MAX were not even based on tests of the C-MAX itself. Rather, Ford relied solely on the testing of the 2013 Fusion Hybrid, although that vehicle is smaller and has more aerodynamic shape.

7.      Plaintiffs are consumers who purchased or leased a 2013 Ford Fusion hybrid (hereinafter the "2013 Fusion Hybrid") or a 2013 Ford C-MAX (hereinafter the "C-MAX") (hereinafter collectively referred to as the "2013 Fusion Hybrid and C-MAX" or the "Vehicles") and

now find themselves with a vehicle that achieves nowhere near the fuel economy they reasonably expected, and would have received had they bought another hybrid vehicle.

8.      As a result of Ford's misrepresentations and material omissions regarding the fuel economy of the Vehicles, Plaintiffs and the Class have suffered damages in that they purchased and/or leased Vehicles that they would not have otherwise purchased and/or leased.  Alternatively, Plaintiffs and the Class would not have paid as much for these Vehicles.  Further, Plaintiffs and the Class have suffered damages in increased fuel expenses and the quantifiable diminution of value for their Vehicles.

9.      Plaintiffs Gregory Holman, Richard Pitkin, Bruce Klafter, Johanna Fontenot, Dean Wilkens, April Tibbetts, James Oldcorn, Jeremy Dobbs, Gary Cole, Richard Weglarz, Raymond Belden, James Griffiths, Charles Kromer, Matthew Romak, Dean Majkrzak, Michael Hendrickson, Leah Broome,  Michael McComas, James DeVito, Robert Fellows, Octavio Hoyos, Sal Lazuka, Mark Goodale, Gary Druckenmiller, William Huff, Martin Babb, Richard and Carol Fox, Dennis Harkins (collectively, "Plaintiffs") bring this action for compensatory damages and equitable, injunctive, and declaratory relief against Ford.  Plaintiffs, individually and on behalf of all others similarly situated, allege the following upon their own knowledge, or where there is no personal knowledge, upon information and belief, and/or the investigation of counsel.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §1332(a)(1), as modified by the Class Action Fairness Act of 2005, because the Plaintiffs and Ford are citizens of different states, there are more than 100 members of the Class (as defined herein), and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of attorneys' fees, interest, and costs.

11.     This Court has personal jurisdiction over Ford because Ford has conducted and continues to conduct business in the State of New York and because Ford committed the acts and omissions complained of herein, in part, in the State of New York.

12.     Pursuant to 28 U.S.C. §1391(b), venue as to Ford is proper in this District. Ford sells a substantial amount of automobiles in this District, has dealerships in this District, and many of Ford's acts complained of herein occurred in this District.

## PARTIES

### I.     PLAINTIFFS

#### A.     Arizona

13.     Plaintiff Gregory Holman is a resident and citizen of the city of Phoenix, Arizona. Plaintiff Holman purchased a 2013 Ford C-MAX on December 6, 2012, at Power Ford in Scottsdale, Arizona. Plaintiff Holman was in the market for a hybrid because he travels long distances for his work. He saw a television advertisement for the C-MAX which said the C-MAX got better gas mileage than the Prius V and achieved 47 miles per gallon highway, city and combined. Mr. Holman also viewed and relied upon advertisements on the C-MAX Facebook page, which echoed this message and included a video ad series called the Hybrid Games which compared the Prius unfavorably to the C-MAX. Mr. Holman relied on the above-referenced ads in making his decision to purchase a C-MAX . Mr. Holman would not have purchased the C-MAX had he know the actual fuel economy of the vehicle.

#### B.     California

14.     Plaintiff Bruce Klafter is a resident and citizen of San Mateo, California. Plaintiff Klafter purchased a 2013 Ford C-MAX on November 24, 2012, at Serramonte Ford in Colma, California. Mr. Klafter has a long commute and only considered high mileage vehicles as part of his search. He made his decision to purchase a C-MAX after researching, viewing, and relying on

representations on Ford's website that stated the C-MAX achieved 47 MPG highway, city, and combined. Mr. Klafter also saw and relied upon a television commercial which informed that the C-MAX had better horsepower than Prius V, beat Prius V in MPG and got 47 combined MPG. Fuel efficiency was the primary basis for his decision to purchase a C-MAX. Mr. Klafter would not have purchased the C-MAX had he known the actual fuel economy of the vehicle.

15.     Plaintiff Richard Pitkin is a resident and citizen of Roseville, California. Plaintiff Pitkin purchased a 2013 Ford C-MAX on or about October 30, 2012, at Folsom Lake Ford in Folsom, California. Mr. Pitkin was in the market for a hybrid car because fuel economy was the most important feature he was looking for in a car. Prior to his purchase, Plaintiff Pitkin visited Ford's website where he saw and relied upon Ford's representations that the C-MAX achieved 47 MPG highway, city, and combined, and which informed him that the C-MAX got better mileage than the Prius. Among other statements on the web, Mr. Pitkin relied on the Hybrid Games video's representation that the Prius V compared unfavorably to the C-MAX. Mr. Pitkin would not have purchased the C-MAX had he known the actual fuel economy of the vehicle.

16.     Plaintiff Johanna Fontenot is a resident and citizen of Altadena, California. Plaintiff Fontenot purchased a 2013 Fusion Hybrid on or about November 11, 2012, at Advantage Ford in Duarte, California. Ms. Fontenot decided to buy the 2013 Fusion Hybrid because she saw and relied on Ford advertised representations on Ford's website and in Ford brochures which stated that the 2013 Fusion Hybrid got 47 MPG in highway and in city driving. She considered buying a 2012 Ford Fusion Hybrid but decided to wait until the 2013 model was available because the advertised mileage of the 2013 model was much higher than the 2012 model. Fuel efficiency was the primary basis for Plaintiff Fontenot's decision to purchase the 2013 Fusion Hybrid. Ms. Fontenot would not have purchased the 2013 Fusion Hybrid if she had known the actual fuel economy of the vehicle.

### C.    Colorado

17.    Plaintiff Dean Wilkins is a resident and citizen of the city of Holyoak, Colorado. Plaintiff Wilkins purchased a 2013 Fusion Hybrid on or about November 20, 2012, at Lakewood Fordland in Lakewood, Colorado. When Mr. Wilkins was in the market for a hybrid vehicle, he went to the Ford website where he saw and relied upon the representation that the 2013 Ford Fusion Hybrid would get 47 MPG in the city and on the highway. Thereafter, Mr. Wilkins went to Lakewood Fordland where he obtained a brochure which also stated that the Fusion Hybrid got 47 MPG both in highway and city driving. Relying on these representations about the 2013 Fusion Hybrid's fuel economy, Mr. Wilkins bought his vehicle. Fuel efficiency was the primary basis for his decision to purchase a 2013 Fusion Hybrid. Mr. Wilkins would not have purchased the 2013 Fusion Hybrid if he had known the actual fuel economy of the vehicle.

### D.    Connecticut

18.    Plaintiff April Tibbetts is a resident and citizen of the city of Terryville, Connecticut. In the fall of 2012, Plaintiff Tibbetts was in the market for a hybrid vehicle because she had a very long commute to her job. She was considering the Prius V, and had never considered buying a Ford. However, while she was watching a television show she had digitally video recorded she saw an advertisement for the Ford CMAX that said it got 47 MPG in highway and city driving which was better than the Prius V. Ms. Tibbetts saved the ad and later show it to her husband. As consequence of seeing and relying on the representations about the C-MAX's fuel economy in that advertisement, Ms. Tibbetts went to Hammonasset Ford in Madison, Connecticut where she received a brochure which reiterated the 47 combined MPG message as to the C-MAX's fuel economy. Thereafter, on or about November 30, 2012, Plaintiff Tibbetts purchased the C-MAX at Hammonasset Ford in Madison, Connecticut, relying on Ford's representations that the C-MAX would get 47 MPG on the highway, and in the city. Fuel efficiency was the primary basis for her decision to purchase a C-

MAX.  Ms. Tibbetts would not have purchased the C-MAX if she had known the actual fuel economy of the vehicle.

### E.      Florida

19.     Plaintiff James Oldcorn is a resident and citizen of Naples, Florida.  Plaintiff Oldcorn purchased a 2013 Ford C-MAX around December 2012 at Galloway Ford in Fort Meyers, Florida. He made his decision to purchase the C-MAX after visiting Ford's website on several occasions over a period of several weeks where he saw and relied on Ford's website advertisements and marketing materials that stated the C-MAX achieved 47 miles per gallon highway, city and combined.  Fuel efficiency was the primary basis for his decision to purchase a C-MAX.  Mr. Oldcorn would not have purchased the C-MAX if he had known the actual fuel economy of the vehicle

20.     Plaintiff Jeremy Dobbs is a resident and citizen of the city of Orlando, Florida.  In mid-2012, Plaintiff Dobbs was in the market for a new vehicle which was fuel efficient because he drives long distances for his work in sales.  He visited Ford's website where he saw the representation that the 2013 Fusion Hybrid would get 47 MPG city, 47 MPG hwy and 47 MPG combined.  After seeing and relying on this information about the 2013 Fusion Hybrid's fuel economy, Plaintiff Dobbs went to the Ford dealership a number of times.  At the dealership, he was given a brochure which reinforced the 47/47/47 fuel economy message.  In reliance on the represented gas mileage, Plaintiff Dobbs purchased a 2013 Fusion Hybrid on or about December 17, 2012, at Sunstate Ford in Orlando, Florida.  Fuel efficiency was the primary basis for his decision to purchase a Fusion Hybrid. Mr. Dobbs would not have purchased the Fusion Hybrid if he had known the actual fuel economy of the vehicle.

### F.      Illinois

21.     Plaintiff Gary Cole is a resident and citizen of the city of Wakarusa, Indiana.  Plaintiff Cole drives as much as 30,000 miles a year for his job and accordingly his number one consideration

in buying a new vehicle was getting high mileage. Mr. Cole researched Ford vehicles on the web and saw and relied on the representation on Ford's website that the C-MAX achieved 47 MPG hwy, 47 MPG city and 47 MPG combined. Thereafter, he went to a Ford dealership and obtained a brochure which reinforced the message that the C-MAX would get 47 MPG in all types of driving. In reliance on the advertised fuel economy of the C-MAX, Plaintiff Cole purchased a C-MAX on January 2, 2013, at Fair Oaks Ford in Naperville, Illinois. Fuel efficiency was the sole basis for his decision to purchase a C-MAX. Mr. Cole would not have purchased the C-MAX if he had known the actual fuel economy of the vehicle.

22.     Plaintiff Richard Weglarz is a resident and citizen of the city of Antioch, Illinois. Plaintiff Weglarz was considering purchasing a Diesel VW Jetta that got very good gas mileage, when he heard that Ford was coming out with a 2013 Fusion Hybrid that was going to get 47 MPG in the city, highway and combined. He then went to the Ford website to research the vehicle. On the Ford website, he saw and relied upon Ford's representations that the vehicle would achieve 47 MPG whether in the city or on the highway. In reliance on these representations, Mr. Welgarz purchased a 2013 Fusion Hybrid on or about November 22, 2012, at Kunes County Ford in Antioch, Illinois. Fuel efficiency was the primary basis for his decision to purchase a 2013 Fusion Hybrid. Mr. Weglarz would not have purchased the 2013 Fusion Hybrid if he had known the actual fuel economy of the vehicle.

### G.     Maryland

23.     Plaintiff Raymond Belden is a resident and citizen of the city of Odenton, Maryland. In late 2012, Plaintiff Belden, who drives approximately 20,00 miles a year, was in the market for a high mileage vehicle when  he saw a Ford television advertisement for the C-MAX. That advertisement stated that the C-MAX got better gas mileage than the Prius V and achieved 47 miles per gallon highway, city and combined. Officer Belden also saw ads for the C-MAX on the internet

when he visited gaming sites. These ads stated that the vehicle got 47 MPG in both city and highway driving and combined. In reliance on the representations of the C-MAX's fuel economy, Plaintiff Belden purchased a C-MAX around January 2013, at Koons Ford in Silver Spring, Maryland. Fuel efficiency was the primary basis for his decision to purchase a C-MAX. Officer Belden would not have purchased the C-MAX if he had known the actual fuel economy of the vehicle.

### H.      Michigan

24.      Plaintiff James Griffiths is a resident and citizen of Bay City, Michigan. Plaintiff Griffiths was in the market for a fuel efficient vehicle because he drives approximately 30,000 miles a year. He visited Ford's website and saw Ford's advertisement that stated that the Ford C-MAX would achieve 47 miles per gallon highway, city and combined. After viewing and relying on this representation, Mr. Griffiths went to a Ford dealership and was given a brochure which reinforced the message that the C-MAX got 47 MPG whether it was driven in the city or on the highway. In reliance on the Ford's representations of the C-MAX's fuel economy, on September 26, 2012, Plaintiff Griffiths purchased a C-MAX on or about September 26, 2012, at Hagen Ford in Bay City, Michigan.     Fuel efficiency was the primary basis for his decision to purchase a C-MAX. Mr. Griffiths would not have purchased the C-MAX if he had known the actual fuel economy of the vehicle.

25.      Plaintiff Charles Kromer is a resident and citizen of Brownstown, Michigan. Plaintiff Kromer was interested in purchasing a fuel efficient vehicle because he drives long distances and went to his Ford dealer to look at several models. At the Ford dealership he studied several Ford vehicles and obtained a brochure for the C-MAX. The C-MAX brochure stated that the C-MAX would achieve 47 MPG city, 47 MPG hwy and 47 MPG combined. The purported fuel economy of the C-MAX was the reason that Plaintiff Kromer purchased a C-MAX on or about January 24, 2013,

at Taylor Ford in Taylor, Michigan.  Mr. Kromer would not have purchased the C-MAX if he had known the actual fuel economy of the vehicle.

26.     Plaintiff Matthew Romak is a resident and citizen of Gibraltar, Michigan.  On or about the end of 2012, Plaintiff Romak, who drives approximately 30,000 a year was in the market for a fuel efficient vehicle in order to save money on gas.  He had originally considered and eliminated hybrid vehicles from his choices because hybrids achieved their best mileage in the city and Mr. Romak mostly drove on highways.  He considered several vehicles, and in furtherance of his goal, he went to Ford's website.  On Ford's website he saw text and video advertisements which informed him that the 2013 Fusion Hybrid achieved 47 MPG in the city, on the highway and combined.  Mr. Romak was impressed with this representation because the Fusion, unlike other competitors' hybrids, obtained top mileage in highway driving.  Mr. Romak visited a Ford dealership and obtained a brochure which reinforced the message that the 2013 Fusion Hybrid achieved 47 MPG on the highway as well as in city driving. In reliance on Ford's representations about the highway fuel economy of the 2013 Ford Fusion Hybrid, Plaintiff Romak purchased a 2013 Ford Fusion Hybrid in January, 2013 at Crest Ford in Flat Rock, Michigan.  Fuel efficiency was the primary basis for his decision to purchase a 2013 Fusion Hybrid.  Mr. Romak would not have purchased the 2013 Fusion Hybrid if he had known the actual fuel economy of the vehicle.

I.     **Minnesota**

27.     Plaintiff Dean Majkzrak is a resident and citizen of the city of Elk River, Minnesota. As he was looking for a car, Plaintiff Majkrzak saw a television ad for the 2013 Fusion Hybrid which drew his attention to the vehicle.  He then went to Ford's website and the Facebook page for the 2013 Fusion Hybrid.  These sites reinforced the message about the fuel economy of the vehicle. Those sites informed that the 2013 Fusion Hybrid would achieve 47 MPG on the highway, as well as in the city.  In reliance on Ford's advertisements for the 2013 Ford Fusion Hybrid, Mr. Majkzrak

purchased a 2013 Fusion Hybrid on or about January 11, 2013, at New Brighton Ford in New Brighton, Minnesota. Fuel efficiency was the primary basis for his decision to purchase a Fusion Hybrid. Mr. Majkzrak would not have purchased the 2013 Fusion Hybrid if he had known the actual fuel economy of the vehicle.

**J.      Missouri**

28.      Plaintiff Michael Hendrickson is a resident and citizen of the city of Rogersville, Missouri. Plaintiff Hendrickson had long been searching for a quality car that achieved great gas mileage. Judge Hendrickson serves as a Circuit judge in Missouri which requires that he travel throughout the largest geographic circuit in Missouri, consisting of five counties. At the time of his search, Plaintiff Hendrickson anticipated driving about 60,000 miles per year for his job and his personal needs. Accordingly he was in the market for a highly fuel efficient car. Plaintiff Hendrickson saw and relied upon the representations on Ford's website and from Ford Salespersons that the 2013 Fusion Hybrid would achieve 47 mpg in both highway and city driving. Judge Hendrickson also obtained a brochure for the 2013 Fusion Hybrid which reinforced the message that the vehicle would achieve 47 mpg in any type of driving. In reliance on these representations, Judge Hendrickson purchased a 2013 Fusion Hybrid on or about January 26, 2013, at Joe Machens Capital City Ford Lincoln in Jefferson City, Missouri. Fuel efficiency was the primary basis for his decision to purchase a 2013 Fusion Hybrid. Judge Hendrickson would not have purchased the 2013 Fusion Hybrid if he had known the actual fuel economy of the vehicle.

29.      Plaintiff Leah Broome is a resident and citizen of Rolla, Missouri. In the fall of 2012, Plaintiff Broome was in the market for a fuel efficient vehicle and had decided to buy a Prius. However, when she saw Ford Hybrid Games commercial which claimed that the C-MAX had better fuel economy than the Prius and got 47 MPG in all types of driving, she decided to consider the C-MAX. Plaintiff Broome also saw and relied on another C-MAX television advertisement which

compared the Prius V's gas mileage unfavorably to the C-MAX. In reliance on these advertisements of the C-MAX's fuel economy, Plaintiff Broome purchased a C-MAX on or about December 2012 at Hutcheson Ford in St. James, Missouri. Fuel efficiency was the primary basis for her decision to purchase a C-MAX. Ms. Broome would not have purchased the C-MAX if she had known the actual fuel economy of the vehicle.

30.    Plaintiff Michael McComas is a resident and citizen of the city of Kansas City, Missouri. In the late summer of 2012, Mr. McComas was in the market for a new fuel efficient vehicle, a friend told him that Ford had a new product called the C-MAX. Thereafter, Mr. McComas went to Ford's website to learn more about the vehicle. On the Ford website, Plaintiff McComas saw and relied upon Ford's representation that the C-MAX got 47 MPG whether driven in the city or on the highway. Mr. McComas also researched the C-MAX online. In reliance on Ford's representations about the C-MAX's fuel efficiency, Mr. McComas purchased a C-MAX on September 21, 2012 at Dick Smith Ford, Inc. in Raytown, Missouri. Fuel efficiency was the primary basis for his decision to purchase a C-MAX. Mr. McComas would not have purchased the C-MAX if he had known the actual fuel economy of the vehicle.

K.    New York

31.    Plaintiff James DeVito is a resident and citizen of Brewster, New York. Plaintiff DeVito spent a year searching for a new fuel efficient car. He heard about the new C-MAX and saw and relied upon television advertisements which stated that the C-MAX got better fuel economy than the Prius V and got 47 MPG in highway or city driving. In reliance upon the television ads and representations that the C-MAX got 47 MPG in all types of driving which Plaintiff DeVito saw on Ford's website, Plaintiff DeVito purchased a C-MAX on or about December 14, 2012, at Brewster Ford in Brewster, New York. Fuel efficiency was the primary basis for his decision to purchase a C-

MAX. Mr. DeVito would not have purchased the C-MAX if he had known the actual fuel economy of the vehicle.

32.     Plaintiff Robert Fellows is a resident and citizen of Valley Cottage, New York. In the fall of 2012, Plaintiff Fellows existing lease of a Prius was coming to an end, and as a result, Plaintiff Fellows was in the market for a new hybrid car. Mr. Fellows visited the Ford website where he saw and relied upon Ford's representation that the C-MAX would achieve 47 MPG, in the city, on the highway and combined. He also saw and relied upon a television commercial for the C-MAX which stated that the C-MAX got better MPG than the Prius V. Relying on the information Ford provided about the fuel economy of the C-MAX, Plaintiff Fellows leased a C-MAX in or about October 2012, at Schultz Ford in Nanuet, New York. Fuel efficiency was the primary basis for his decision to lease a C-MAX. Mr. Fellows would not have leased the C-MAX if he had known the actual fuel economy of the vehicle.

33.     Plaintiff Octavio Hoyos is a resident and citizen of the city of Howard Beach, New York. Plaintiff Hoyos owns his own janitorial service business and drives approximately 30,000 miles a year. As a result, in the fall of 2012, he was in the market for a fuel efficient vehicle. He was considering the Prius and the Nissan Leaf. However, he saw a C-MAX television commercial which stated that the C-MAX got 47 MPG in city and on the highway and better MPG than the Prius V. After seeing and relying on that advertisement, Plaintiff Hoyos went to Ford.com where he saw and relied upon additional statements that the C-MAX got 47 MPG in all types of driving. In reliance on these advertisements, Mr. Hoyos purchased a C-MAX on or about December 4, 2012, at Bay Ridge Ford in Brooklyn, New York. Fuel efficiency was the primary basis for his decision to purchase a C-MAX. Mr. Hoyos would not have purchased the C-MAX if he had known the actual fuel economy of the vehicle.

### L.   Ohio

34.   Plaintiff Sal Lazuka is a resident and citizen of the city of Painesville, Ohio. Plaintiff Lazuka owns his own business and drives approximately 22,000 miles a year for his job. He owned a 2010 Fusion and had been satisfied with the gas mileage of that vehicle. However, he was interested in getting even better gas mileage. In 2012, he learned about the new 2013 Fusion Hybrid and the fact that it was supposed to achieve 47 MPG in city, highway and combined from Ford's presentation at the Detroit Auto show and from Ford's website which stated that the 2013 Fusion Hybrid would get 47 MPG in all types of driving. In reliance on these representations, Plaintiff Lazuka purchased a 2013 Fusion Hybrid on or about November 23, 2012, at Classic Ford in Mentor, Ohio. Fuel efficiency was the primary basis for his decision to purchase a 2013 Fusion Hybrid. Mr. Lazuka would not have purchased the 2013 Fusion Hybrid if he had known the actual fuel economy of the vehicle.

### M.   Oregon

35.   Plaintiff Mark Goodale is a resident and citizen of the city of Beaverton, Oregon. In late 2012, Plaintiff Goodale was in the market for a new fuel efficient car which had room for four passengers so that he could transport his parents comfortably. He considered both the Prius and the Ford Fusion Hybrid Mr. Goodale went to Ford's website and saw and relied upon the Ford's statements that the 2013 Fusion Hybrid achieved 47 MPG in the city and on the highway. Believing Ford's representations about the 2013 Fusion Hybrid's fuel economy, Mr. Goodale was convinced that the 2013 Fusion Hybrid was more fuel efficient that the Prius, Plaintiff Goodale also went to the Ford website where he saw statements which reinforced the message that the 2013 Fusion Hybrid achieved 47 mpg in any type of driving. Relying on both of these representations, Plaintiff Goodale purchased a 2013 Fusion Hybrid on or about January 2, 2013, at Landmark Ford in Tigard, Oregon. Fuel efficiency was the primary basis for his decision to purchase a 2013 Fusion Hybrid. Plaintiff

Goodale would not have purchased the 2013 Fusion Hybrid if he knew the actual fuel economy of the vehicle.

### N.   Pennsylvania

36.    Plaintiff Gary Druckenmiller is a resident and citizen of the city of Lewistown, Pennsylvania. In 2012, Mr. Druckenmiller was in the market for a fuel efficient car because he had recently retired and he and his wife were planning to do some travelling with a new vehicle. He considered several cars, including the Ford Fusion eco-boost as well as the 2013 Fusion Hybrid. However, he went online to a variety of sources including the Ford website where he was informed that 2013 Fusion Hybrid achieved 47 MPG city, highway and combined. Another website cited the Ford figures calling the 2013 Fusion Hybrid a "Prius killer". After viewing and relying on Ford's claim that the 2013 Fusion Hybrid got 47 MPG in any type of driving, Plaintiff Druckenmiller went to a Ford dealership and test drove the vehicle. He was impressed with the ride and asked his salesperson if the car really got 47 MPG. The dealer assured him it did, and relying on the Ford's representations about the 2013 Fusion Hybrid's fuel economy, Plaintiff Druckenmiller purchased a 2013 Fusion Hybrid in or about December 2012 at State College Ford in State College, Pennsylvania. Fuel efficiency was the primary basis for his decision to purchase a 2013 Fusion Hybrod. Mr. Druckenmiller would not have purchased the 2013 Fusion Hybrid if he had known the actual fuel economy of the vehicle.

37.    Plaintiff William Huff is a resident and a citizen of Boalsburg, Pennsylvania. Plaintiff Huff purchased a 2013 Fusion Hybrid in November 2012 at State College Ford in State College, Pennsylvania. Plaintiff Huff had a 2010 Ford Fusion Hybrid which was averaging 38-39 MPG. While he was happy with the mileage of that vehicle, Mr. Huff decided to replace his vehicle with a new 2013 Fusion Hybrid when he learned, from Ford, on the Ford website among other places, that the 2013 Fusion Hybrid would achieve 47 MPG city, highway and combined. Fuel

efficiency was the primary basis for his decision to purchase a 2013 Fusion Hybrid. Mr. Huff would not have purchased the 2013 Fusion Hybrid if he had known the actual fuel economy of the vehicle.

### O.    Washington

38.    Plaintiff Martin Babb is a resident and citizen of Burien, Washington. Mr. Babb first heard about the C-MAX when a friend bought one. Thereafter, he went to the Ford website to learn more about the vehicle. On the Ford website he saw and relied on the message that the C-MAX delivered 47 MPG in the city, on the highway and combined. After seeing the message on the website, Plaintiff Babb started seeing Ford's message about the 47 MPG C-MAX everywhere. Relying on this fuel economy message, Mr. Babb purchased a C-MAX on December 5, 2012 at Sound Ford in Renton, Washington. The fact that the C-MAX was represented as getting 47 MPG city, highway and combined was of critical importance to Mr. Babb. Fuel efficiency was the primary basis for his decision to purchase a C-MAX. Mr. Babb would not have purchased the C-MAX if he had known the actual fuel economy of the vehicle.

39.    Plaintiffs Richard and Carol Fox are residents and citizens of the city of Ridgefield, Washington. As of 2011, Mr. and Mrs. Fox owned three Ford vehicles, including a 2008 Ford Fusion which got 33 MPG. Although the Fox Plaintiffs' were happy with their Ford vehicles, including their 2008 Fusion, on or about the end of 2011 or early in 2012, the Foxes learned about the soon to be released 2013 Fusion Hybrid in *My Ford* magazine, which informed them that the 2013 Fusion Hybrid would get 47 MPG city, highway and combined. After learning about the 2013 Fusion Hybrid in *My Ford* magazine, the Fox Plaintiffs went to Ford's website, where they read and relied upon the message that the 2013 Fusion Hybrid achieved 47 MPG in all types of driving. Relying on these representations about the car, the Fox Plaintiffs purchased a 2013 Fusion Hybrid on or about November 16, 2012, at I5 Ford aka Uhlmann Ford in Chehalis, Washington. Fuel efficiency was the primary basis for their decision to purchase a 2013 Fusion Hybrid. The Fox

Plaintiffs would not have purchased the 2013 Fusion Hybrid if they had known the actual fuel economy of the vehicle.

### P.    Wisconsin

40.    Plaintiff Dennis Harkins is a resident and citizen of the city of Fitchburg, Wisconsin. In the fall of 2012, Plaintiff Harkins was ready to replace his Honda Civic Hybrid. He considered the Toyota Camry Hybrid in addition to the C-MAX. As part of his investigation, Plaintiff Harkins did online research and as part of that research, he saw and relied upon a Ford video entitled Hybrid Games that transmitted the message that the C-MAX got better fuel economy that the Prius V, achieving 47 MPG city, highway and combined. He went to the Ford website and saw marketing statements about the C-MAX which reinforced the message that the C-MAX got 47 MPG in any type of driving. Relying on Ford's representations of the fuel economy of the C-MAX, Plaintiff Hawkins purchased a C-MAX on November 19, 2012, at Kayser Ford in Madison, Wisconsin. Fuel efficiency was the primary basis for his decision to purchase a C-MAX. Mr. Harkins would not have purchased the C-MAX if he had known the actual fuel economy of the vehicle.

## II.    FORD FORD MOTOR COMPANY

41.    Ford Motor Company is a global automotive industry leader based in Dearborn, Michigan that manufactures automobiles across six continents. Through dealerships, Ford causes its vehicles to be sold across the U.S. It is the second largest U.S.-based automaker, and is the world's fifth largest automobile manufacturer. Ford operates 90 plants around the world and employs over 200,000 employees. Ford distributes its vehicles throughout the United States via Ford dealerships, including in New York. Ford is publicly traded on the New York Stock Exchange.

## FACTUAL ALLEGATIONS

### I.   THE IMPORTANCE OF FUEL ECONOMY AND MARKET FOR FUEL-EFFICIENT "HYBRID" VEHICLES

42.   Fuel economy is now the primary consideration for consumers when they purchase a new vehicle. A recent research study commissioned by Ford found, for instance, that "[n]ew vehicle buyers across the industry rate good fuel economy as the No. 1 purchase reason." Separate studies conducted by the Consumer Reports National Research Center and J.D. Power and Associates in 2012 both reached the same conclusion, finding that gas mileage was the biggest influence on consumers' purchasing decisions.

43.   Fuel economy is particularly important to buyers of hybrids and other small cars. As Ford put it, "buyers of small vehicles are most likely to put fuel economy toward the top of their list of purchase considerations."

44.   Consumers not only prefer vehicles that get better gas mileage, they are willing to pay more for those vehicles. A survey conducted by Consumer Reports in late 2011 found that 83% of consumers would be willing to pay more for a vehicle that offers better fuel economy.

45.   Automakers have capitalized on consumers' willingness to pay for better mileage by charging premium prices for "hybrid" vehicles, which combine a standard gas-powered engine with an electric motor to achieve better fuel economy. This "hybrid premium" is typically several thousand dollars.

46.   Consumers value high-mileage vehicles not only because of their lower fuel costs, but also because of the vehicles' environmental benefits. As Ford explains it, "[c]hoosing a car that lessens [consumers'] impact on the environment as well as their wallets can really create peace of mind."

## II.    FORDS LACK OF SUCCESS IN THE HYBRID MARKET

47.    Ford was one of the last automakers to act upon the importance that consumers were placing on environmentally-friendly vehicles and to offer fuel-efficient hybrid vehicles. It was not until the fall of 2009 that Ford released its first hybrid sedan—the 2010 Fusion Hybrid.

48.    The 2010 Fusion Hybrid was marketed as achieving only 36 MPG city, and 41 MPG highway for a combined 39 MPG, which was well behind the fuel economy offered by competing hybrid vehicles. For example, the market-leading 2010 Toyota Prius offered 51 MPG city, 49 highway, for a combined 50 MPG.

49.    Although the 2010 Fusion Hybrid was roomier than the 2010 Prius, the relatively low fuel economy offered by the 2010 Ford Fusion proved insufficient to draw consumers away from the competition or convince loyal Ford customers to enter the hybrid market and pay the hybrid premium. As a result, Ford's entrance into the hybrid car market was largely unsuccessful and it achieved only a marginal share of the hybrid market.

50.    The 2011 Fusion Hybrid and 2012 Fusion Hybrid were refreshed versions of the 2010 first generation model and did not offer any improvement in fuel economy, and by mid-2012, Ford's share of the hybrid market was languishing at 3%.

## III.    FORD REVERSES ITS FORTUNES WITH A MASSIVE "47/47/47 MPG" ADVERTISING CAMPAIGN

51.    To successfully compete in the hybrid market, Ford knew that it needed to convince consumers that its hybrid vehicles achieved better fuel economy and were superior to Toyota's Prius line. However, Ford's challenge was made more difficult with the arrival of Toyota's Prius V model, which provided space comparable to Ford's 2012 Fusion Hybrid, but was advertised as achieving 44 MPG city, 40 MPG highway, for a combined 42 MPG, significantly better than the fuel economy than the 2012 Fusion Hybrid. Into this competitive marketplace, Ford launched its 2013

Fusion Hybrid and the new C-MAX (a hatchback that uses the same engine and transmission as the Fusion)— with a massive marketing campaign claiming that Ford had made a quantum leap in fuel efficiency and that these two models would achieve 47 MPG city, 47 MPG hwy, and 47 MPG combined.  The 47/47/47 claim set the Fusion Hybrid and the C-MAX apart from Toyota's Prius line because the Prius only achieved its best fuel economy in city driving.  The promise that the 2013 Fusion Hybrid and C-MAX could achieve highway fuel economy equivalent to that in the city was a critical difference and made Ford's new offerings attractive to customers who drove long distances.

52.     Ford's "47 MPG" advertising campaign was a spectacular success, triggering a rapid turnaround in its hybrid business.  In January 2013, Ford announced that its share of the hybrid market had reached 16%—more than a five-fold increase from its 3% market share prior to the launch of the 2013 Fusion Hybrid and C-MAX and the massive advertising campaigns misleading consumers about the Vehicles' fuel economy.

53.     Indeed, in May 2013, Ford announced it was now the second-leading auto company in the hybrid market, and its market share was continuing to grow.  In July 2013, Ford announced that its sales of hybrid vehicles was up over 517% over 2012 and was continuing to grow—up 15% from the first quarter of 2013.  And in August 2013, Ford announced that it had achieved record hybrid sales for the eleventh consecutive month.

A.     **The Pervasive Scope of Ford's "47" Campaign**

54.     Ford has attributed its sudden turnaround to the "47 MPG," boasting that its vaunted fuel economy figures are the reason that Toyota and Honda owners are trading in their hybrids for Ford hybrids, and the reason that Ford hybrids are selling well even in traditionally non-hybrid markets.

55.     Ford was able to get the "47 MPG" message out so quickly—and convert so many consumers who had previously spurned Ford hybrids—through the pervasiveness and simplicity of its "47" campaign.

56.     Ford kicked off its "47" campaign with a September 2012 event in Times Square, with Ryan Seacrest as the emcee and the number "47" featured prominently and in a variety of ways. As Ford put it, "The number 47 takes center stage today in Times Square." The company's CEO appeared holding a large sign displaying the number "47" that was projected on giant LED screens, crowds of people wore "47" T-shirts and held up signs to make a "47" montage visible from the sky, and Ford announced its "47 Challenges, 47 Days" multi-media campaign.

57.     As the grandiose kick-off to the campaign suggests, Ford's "47" ad campaign spared no expense to "target[] all hybrid intenders on the fence … to all age groups, all income levels." Ford used what it called a "transmedia" campaign "to go with people where they go – desktop to mobile to digital to social to experiential."

58.     Ford's transmedia campaign was tremendously successful, as potential hybrid consumers could not help but to be exposed to Ford's "47 MPG" message in a variety of forms. Among the ways that Ford impressed on consumers that the Vehicles offered vastly improved fuel economy:

> a.   TV commercials:  Ford aired television advertisements thousands of times, in all major media markets, on major networks, and at all times of the day touting the fuel economy of the Vehicles.
>
> b.   Magazine Advertisements:  Ford ran hybrid advertisements in numerous and varied magazines—such as *Sports Illustrated, Sunset, The New Yorker, and Time*—with collective national circulations in the tens of millions.

c.  <u>Social Media</u>: Ford used Facebook, Twitter, and other social media to spread the "47 MPG" message. One prominent example was the "47 Challenges, 47 Days" event broadcast over social media. In the "47 Day Photo Challenge," for example, consumers were asked to submit photos that "captured the spirit of the Hybrid Fusion's 47 mpg."

d.  <u>Time Square Launch Event</u>: Described above, where, as Ford put it, the number 47 took center stage.

e.  <u>Webisodes</u>: Ford used an online series of webisodes called "Hybrid Games" that, as of December 2012, had been viewed nearly 417,000 times.

f.  <u>Dealership Advertisements</u>: Ford entered into co-advertising arrangements with its dealerships, which ran advertisements in local newspapers and on the internet touting the Vehicle's 47 MPG.

g.  <u>Promotional Brochures</u>: Promotional brochures touting the 2013 hybrids' 47 MPG were available at Ford dealerships throughout the country.

h.  <u>Ford's Website</u>: Ford's on-line profiles of its 2013 hybrids touted the fuel economy of the Vehicles.

i.  <u>Press Releases</u>: Ford issued a number of national press releases boasting about it's the Vehicles' improved fuel economy and the success of its 47 MPG advertising.

**B.   The "47" Campaign's Real-World Message**

59.   Ford's "47 MPG" campaign was not designed to convey that its 2013 Fusion Hybrid and C-MAX achieved 47 MPG only in a laboratory setting that would not be reflected in consumers' real-world gas mileage. To the contrary, Ford's campaign emphasized that the "47 MPG" was

something that the Vehicles would actually deliver and that had relevance to potential hybrid consumers.

60.     As Ford has stated, its advertisements are intended to convey that its hybrids offer "'real vehicle' performance, technology and value." Whereas Ford criticized advertisements from other automakers as "too slick," it professed that "[b]eing more real is another way this [47 mpg] campaign truly reflects the vehicle."

61.     Ford also has recognized that actually "[d]elivering fuel efficiency is important" to consumers. In other words, an MPG rating is not significant to consumers unless that rating is actually delivered in real-world performance.

62.     Some of Ford's advertisements include small type at the bottom that reads, "EPA-estimated 47 city/47 hwy/47 combined mpg. Actual mileage will vary." This is standard boilerplate language that all automakers include when they make representations about their vehicles' fuel economy in advertisements, and did not alter the campaign's overall impression on consumers.

63.     Although Ford chose to make the "47" the center of its advertising campaign, nowhere in the campaign did it make a distinction between real-world performance and the EPA-estimated rating. In fact, Ford stressed that the 47 MPG figure was one that its 2013 hybrids actually "deliver," that "it's true" the hybrids get 47 MPG, that they actually "achieve" the 47 MPG, and that consumers can expect "47 mpg for me."

- "The Ford Fusion Hybrid delivers a remarkable 47 mpg city and highway"
- "C-MAX Hybrid is Ford's first hybrid vehicle to offer 47 mpg across the board."

- "C-MAX Hybrid delivers EPA-certified 47 mpg city, 47 mpg highway ratings – 7 mpg better than the Toyota Prius v on the highway – for a 47 mpg combined rating."

- "The Ford Fusion delivers a U.S. EPA-certified 47 mpg city, 47 mpg highway and 47 mpg combined in its hybrid model!"

- "47 mpg in the city and on the highway? Yes, it's true. The all new Fusion Hybrid achieves 47 combined mpg – doubling the fuel economy of the average vehicle."

- "Fusion Hybrid gets 47 MPG in the city, on the highway and combined."

- "47 mpg hybrid for me."

64.     Ford's representations about the Vehicles' fuel economy did not stop there. In fact, in a February 6, 2013, "Ford Fusion Lunch Date" interactive web live chat with customers, Gil Portalatin, the Chief Programming Engineer for Electrified Programs and Integration told a customer asking about the ability to get the advertised fuel economy of the 2013 Fusion Hybrid that, "You can get it. It is there."

65.     Additionally, Ford stated "C-MAX Hybrid returns the same fuel economy whether driving cross-country or across the city – stemming mostly from a growing list of Ford innovations that have helped the vehicle to deliver an impressive list of metrics, such as its 570-mile overall range, taking customers from Los Angeles to Las Vegas and back on one tank of gas."

66.     In the same press release, Ford stated, "C-MAX Hybrid to offer 'real car' range at 570 miles on one tank of gas, taking customers from Los Angeles to Las Vegas and back on one tank, beating Toyota Prius v by 120 miles."

67.     On the Ford C-MAX official Facebook page, Ford was unequivocal about the C-MAX's gas mileage. For example, on August 7, 2012, the Company posted the following:

- " If someone asks what MPG the C-MAX Hybrid gets, you can tell them 47. That's because the all-new 2013 Ford C-MAX Hybrid delivers EPA-certified 47 mpg city and 47 mpg highway ratings for a 47-mpg combined rating."

- The message that the C-MAX delivered 47 MPG is also evidenced by this August 21' 2012 official Facebook post :

- "Robert W. asked if the C-MAX Hybrid can keep up with the 2013 Escape on long interstate highway trips. With 47/47/47 miles per gallon the C-MAX Hybrid can more than keep up and achieve an estimated 570 miles on a single tank of gas.

68.     These representations were false and misleading in that they left reasonable consumers with the overall impression that Ford's 2013 Fusion Hybrid and C-MAX did, in fact, deliver the 47 MPG and that they would be able to achieve these fuel economy figures under real world driving conditions.

C.     **Comparisons to Other Hybrid Vehicles**

69.     Ford underscored the real-world value of the "47 MPG" it was advertising by comparing that figure to other hybrid vehicles that consumers might be considering.

70.     For example, Ford boasts that the 2013 Fusion Hybrid "tops the Toyota Camry Hybrid by 8 mpg highway and 4 mpg city, and delivers the highest-ever fuel economy numbers in city and highway driving for a midsize sedan."

71.     Similarly, an ad entitled "Wrong Direction" for the 2013 Fusion Hybrid contained the narration, "Introducing the entirely new Ford Fusion with a Hybrid that's the <u>most</u> fuel efficient midsize sedan in America.

72.     Another ad for the 2013 Fusion Hyrbid entitled "New Idea" stated that the 2013 Fusion doubles the fuel economy of the average vehicle.

73.     Additionally, Ford advertised that the C-MAX "beats Prius V with better mpg" and is "Miles Per Gallon Ahead of the Competition."

74.     Indeed, Ford regularly compared the mileage of the C-MAX to that of the Toyota Prius.  In fact, Ford focused a large part of its fall 2012 C-MAX marketing campaign on a comparison of these two vehicles.  Matt VanDyke, director of U.S. Marketing Communications of Ford, described the C-MAX ads as "simple, unique spots that will introduce our first all-hybrid line in North America to Americans by . . . showing how it beats Prius v, especially in fuel economy."

75.     In one ad comparing the C-MAX to the Prius V, Ford touted that the C-MAX also beats Prius V with better MPG.

76.     Additionally, in July and August 2012, Ford boasted that the C-MAX raises the bar for hybrid fuel economy and takes customers further than the Toyota Prius.

77.     That same theme is used in a cartoon ad containing the headline: "Ford C-MAX vs. Toyota Prius v, How Far on a Tankful?."  That ad depicts the Prius stopping at a gas station first, while the C-MAX continues driving.  Then the legend, "C-MAX 571 miles, Prius only 450 Miles," appears,  followed by "C-MAX Hybrid Maximizes a Tank of Gas,"  and finally, "Stop Less, Go More".

78.     In another similar ad, "C-MAX Hybrid MPG" a cartoon graphic depicted that the C-MAX beat Prius V in combined MPG.  The ad depicted the Prius V as getting 44 MPG combined

while C-MAX achieved 47 MPG combined, concluding, "C-MAX Hybrid Maximizes MPG, Stop Less, Go More."

79.      In one internet ad, entitled "The Hybrid Games Challenge: MPG Showdown," two actors portray reporters trying to determine whether the C-MAX or Prius V had better MPG. In the ad, the announcers state that the total range of the C-MAX is 571 miles while the Prius' driving range is 450 miles. This information is also displayed graphically on the screen.  The announcer then states, "So the C-MAX should go further on a tank of fuel."  Then, a Prius owner and a C-MAX owner are shown purportedly going about daily errands.  The ad then depicts the Prius owner having to stop for gas before the C-MAX owner, confirming ostensibly the better MPG of the C-MAX.

80.      In another ad entitled "Say Wheeee," Ford stated that the C-MAX "bests" the Toyota Prius V in MPG, concluding the commercial with the statement: "Say Hi to the all new 47 combined mpg C-MAX Hybrid."   The video component of the ad showed an image of the vehicle with an accompanying "47 mpg" graphic.

81.      Another "Say Wheeee" ad states that "C-MAX has lots more horsepower than Prius v, a hybrid that C-MAX also bests in mpg."

82.      An ad entitled "Be Great" contained the narration, "Meet the five passenger Ford C-MAX Hybrid . . . [that] beats Prius v with better MPG . . . Say hi to the all new 47 combined mpg C-MAX Hybrid."

83.      Additionally, Ford stated that the C-MAX "delivers EPA-certified 47 mpg city, 47 mpg highway ratings – 7 mpg better than the Prius v" and claimed that customers would pay less at the dealership and less at the pump for a C-MAX versus a Prius V.

84.    Ford refers to the C-MAX as "[t]he country's most fuel-efficient and affordable hybrid" and touted that the "C-MAX Hybrid at 47 mpg combined beats Prius v by 7 mpg in the compact hybrid utility segment."

85.    These comparisons were false and misleading as they created the impression that Plaintiffs would attain better mileage with the C-MAX than they would be able to with a Prius or other non-Ford hybrid vehicle.  However, the Prius actually achieves better MPG than the C-MAX in real-world driving conditions.

86.    The only overall impression that Ford's "47" campaign could leave on a reasonable consumer was that Ford's 2013 hybrids did, in fact, deliver the 47 MPG that Ford featured so prominently and repeatedly in its marketing.  As J.D. Power put it, Ford created "marketing excitement to indelibly impress in consumer minds that its new 2013 Ford Fusion ... can be ordered as a hybrid that achieves a 47 mpg combined travel range."

**D.    The 2013 Fusion Hybrid and C-MAX Deliver Nowhere Near 47 MPG**

87.    As Ford's rapid increase in hybrid market share reflects, consumers were in fact influenced by Ford's "47" campaign and reasonably believed that the Vehicles would deliver 47 MPG under normal, real-world driving conditions.  This view was particularly reasonable considering Ford professed that the 2013 Fusion Hybrid and the C-MAX would get 47 MPG in any type of driving, whether in the city or on the highway.

88.    Yet those consumers who were convinced to re-evaluate their position toward Ford's previously lackluster hybrids and purchase a 2013 Fusion Hybrid or C-MAX would soon learn that they had been misled.  The Vehicles did not deliver the promised 47 MPG highway which set them apart from their competitors, and they did not even come close to 47 in city driving.

89.    Shortly after Ford released its 2013 Fusion Hybrid and C-MAX for sale, buyers began complaining in droves about the low gas mileage they were able to achieve—to Ford, to the EPA, to

Plaintiffs' lawyers, and online.  The vast majority report an inability to even reach MPG in the high 30s, even when using hyper-milling techniques (as opposed to normal driving conditions), much less the 47 MPG that Ford had  promised consumers within its advertising.  Additionally, consumers could not attain fuel economy that "beats" Toyota's Prius.

90.    Independent testing has confirmed consumers' experiences, as even automotive professionals have repeatedly failed to come anywhere near 47 MPG.  In October 2012, Larry Vellequette of Automotive News reported that after logging more than 1,000 miles with the C-MAX, he had achieved only slightly above 37 MPG.  Even after meeting with Ford's chief engineer and following his recommendations to improve fuel economy, Mr. Vellequette was still unable to achieve anywhere near 47 MPG.

91.    Additionally, *Consumer Reports* tested the 2013 Fusion Hybrid and C-MAX in December 2012 and reported that it was able to achieve only about 39 MPG with the 2013 Fusion Hybrid and 37 MPG with the C-MAX, concluding that Ford overstated the fuel economy of the C-MAX and 2013 Fusion Hyrbid "by a whopping 10 and 8 MPG, respectively, or about 20 percent."

92.    In fact, *Consumer Reports* stated that Vehicles had the largest discrepancy between their overall results and the estimates published that *Consumer Reports* had seen among any current models.

93.    In April 2013, Autoblog tested the 2013 Fusion Hybrid and reported that under normal use, the 2013 Fusion Hybrid manages only about 37 MPG; the best the professional reviewer was able to accomplish was just over 40 MPG.  Other professional drivers and car reviewers achieved similar results.

94.    Ford would have known that its 2013 Fusion Hybrid and C-MAX achieved less than 40 MPG under normal driving conditions even before consumers and professional reviewers

reported their disappointing results.  Prior to the release of any vehicle, Ford and other automakers do field testing where a number of vehicles are subject to extensive real-world driving and the resulting data—which includes actual gas mileage—is recorded and analyzed.

95.     Even though Ford knew that its 2013 Fusion Hybrid and C-MAX did not actually get anywhere near 47 MPG, it still chose to implement a massive "47 MPG" advertising campaign overstating the real world fuel economy of the Vehicles.  And it continued the "47 MPG" campaign after buyers complained that the Vehicles actually deliver much lower mileage.

96.     It is only now that the 2013 model year is almost over, after Ford achieved its much-coveted rise in hybrid market share, and after the lawsuits that comprise this MDL were filed, that Ford has taken steps to acknowledge that its 2013 Fusion Hybrid and C-MAX actually do not get 47 MPG.

### E.     Ford Acknowledges that the Vehicles Do Not Achieve the Advertised Fuel Economy

97.     In an implicit acknowledgement that its "47 MPG" campaign was misleading, Ford is offering 2013 Fusion Hybrid and C-MAX hybrid owners a software upgrade to improve their fuel economy.  Even with this upgrade, consumers continue to report average mileage well below 47 MPG. In addition, Ford remains silent about the performance trade-offs associated with the upgrade.

98.     Ford lowered the estimated MPG for the C-MAX, from 47/47/47 to 45 city, 40 hwy, for a combined 43 MPG.  Thus, Ford now admits that, contrary to its prior representations, the C-MAX does not achieve its best fuel economy in highway driving.  Unfortunately, this disclosure comes too late for the myriad Ford customers who bought the vehicle because it purportedly delivered better highway MPG than any of its competitors.

99. Along with the restatement, came an announcement that Ford based the advertised fuel economy figures of the C-MAX on testing of the 2013 Fusion Hybrid and not on testing of the C-MAX itself.

100. Indeed, without ever actually testing the fuel economy of the C-MAX under EPA standards, Ford repeatedly touted its "47 MPG" message creating the impression that consumers would be able to achieve these results under real world conditions.

101. Thus at the time Ford made the statements touting the C-MAX's class-leading fuel economy, Ford knew that the "47 MPG" estimates were not achieved by the C-MAX. However, Ford continued to defend its advertised figures.

102. Ford is also now offering "good will" payments to C-MAX owners and lessees (but not to 2013 Fusion Hybrid owners and lessees). Although these payments provide partial compensation to C-MAX owners as reimbursement for their increased fuel costs, it is not solving the underlying problem. As one C-MAX owner put it, "C-MAX owners don't want $550. They want a car that gets 47 miles per gallon."

103. As a result of Ford's misleading "47 MPG" campaign, buyers and lessees of 2013 Fusion Hybrid and C-MAX are stuck with cars that deliver substantially less fuel economy than they reasonably expected (and could have received by buying another hybrid). Their cars will each produce about a half ton more carbon dioxide per year, they will have to re-fuel more often, and they will incur additional fuel costs. In addition, because the desirability and market value of vehicles is so heavily dependent on fuel economy, their cars are worth less and cannot be re-sold as easily or for as much money.

## CLASS ACTION ALLEGATIONS

104. Plaintiffs bring this action as a class action pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated as

members of the following Class: All persons in the United States who purchased and/or leased one of the Vehicles (the "Class"). Specifically excluded from the proposed Class is Ford, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, and joint ventures, or entities controlled by Ford, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Ford and/or its officers and/or directors, or any of them; any judge assigned to this action, and any member of their immediate family. Subject to additional information obtained through further investigation and discovery, the foregoing Class definition may be expanded or narrowed by amendment or amended complaint. Plaintiffs expressly reserve the right to move for class certification of different state classes and subclasses.

105.     **Numerosity of the Class**. The members of the Class are so numerous that their individual joinder is impracticable. Upon information and belief, Ford sold approximately 30,000 C-MAX and 20,00 Fusion vehicles. Plaintiffs are informed and believe that there are thousands of members in the Class. Inasmuch as the Class members may be identified through business records regularly maintained by Ford and its employees and agents, and through the media, the number and identities of Class members can be ascertained. Members of the Class can be notified of the pending action by e-mail and mail and supplemented by published notice, if necessary.

106.     **Existence and Predominance of Common Question of Fact and Law**. There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual Class members. These common legal and factual issues include, but are not limited to:

     a.   whether the Vehicles achieve gas mileage materially lower than the advertised mileage;

b.  whether the Vehicles achieve mileage range on a single tank of gas materially less than the advertised range;

c.  whether Ford's overstatement of its Vehicles' fuel economy was materially misleading;

d.  whether Ford's advertisements were false and deceptive in conveying that the Vehicles would achieve the advertised gas mileage in normal, real-world highway usage;

e.  whether Ford's advertisements failed to provide material disclosures that the gas mileage cannot be achieved in normal, real-world highway usage;

f.  whether Ford willfully concealed the misrepresentations regarding MPG or recklessly disregarded their falsity;

g.  whether Ford breached any warranties in selling the Vehicles which misrepresented MPG;

h.  whether Ford's conduct violates the laws as set forth in the causes of action;

i.  whether Plaintiffs and Class members are entitled to equitable or injunctive relief;

j.  whether Plaintiffs and the Class are entitled to restitution or damages, and what is the proper measure of damages;

k.  whether Ford's software upgrade to improve fuel economy was in response to this litigation;

l.  whether Ford's goodwill payments to C-MAX consumers was in response to this litigation; and

m. whether there are undisclosed performance trade-offs associated with Ford's software upgrade.

107.   **Typicality**. The claims of the representative Plaintiffs are typical of the claims of each member of the Class. Plaintiffs, like all other Class members, have sustained damages arising from Ford's violations of the laws, as alleged herein. The representative Plaintiffs and Class members were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Ford.

108.   **Adequacy**. The representative Plaintiffs will fairly and adequately represent and protect the interests of the Class members and have retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiffs and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

109.   **Predominance and Superiority**. This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class, and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual Class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Ford's conduct. Further, it would be virtually impossible for Class members to individually redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized

litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

110.    Plaintiffs contemplate the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, Ford's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, Plaintiffs would contemplate the use of additional media and/or mailings.

111.    Additionally, this action is properly maintained as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

    a.    without class certification and determination of declaratory, injunctive, statutory, and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

        i.    inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

        ii.    adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b.   the parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

c.   common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

    i.   the interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

    ii.   the extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

    iii.   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    iv.   the difficulties likely to be encountered in the management of a class action.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Violation of California Business & Professions Code §17200, *et seq.*,**
**Unfair Competition Law)**
**on Behalf of All Plaintiffs or, Alternatively, the California Plaintiffs**

112.   Plaintiffs and the Class incorporate by reference the previous allegations as if fully set forth herein.

113.    The Unfair Competition Law (the "UCL") defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.  The UCL also provides for injunctive relief, restitution, and disgorgement of profits for violations.

114.    Ford's unlawful, unfair, and fraudulent business acts and practices are described throughout this Complaint and include, but are not limited to, the following.  First, Ford falsely advertises the fuel economy of the Vehicles as best in class and beating rival Prius V. Second, Ford advertisements refer to the Vehicles as "the 47 combined mpg C-MAX Hybrid" and/or state that the Vehicles "get," "achieve," or "offer" 47 MPG however, this is untrue, and drivers do not achieve anything nearing this level of fuel efficiency in real-world driving.  Third, insofar as Ford purports to be advertising fuel economy estimates, it does so while failing to disclose that the fuel economy figures they repeatedly tout are estimates and not based on real-world fuel economy.  Furthermore, Ford's advertisements do not comply with FTC regulations governing advertising of fuel economy as set forth in 16 C.F.R. §259.2(a).  Fourth, Ford fails to provide the disclaimer that the advertised rates will vary with actual MPG ratings achieved in the real world, consistent with the requirements of 40 C.F.R. §600.302-08(b)(4).  Fifth, Ford provides additional affirmative misrepresentations that indicate that consumers should expect the Vehicles to achieve the advertised fuel economy in normal, real-world use.  Lastly, Ford failed to disclose that the MPG figures that they repeatedly touted and advertised for the C-MAX are not based on actual tests of the C-MAX.

115.    In addition to the above, Ford's conduct constitutes violations of California Civil Code §§1572-1573, 1709, 1711, and 1770 and the common law.    Furthermore, Ford's practices violate the declared legislative policies as set forth by the federal government in 40 C.F.R. §600.307(a)(ii)(A); and §§600.302-08(b)(4) and 16 C.F.R. §259.2(a).  Plaintiffs reserve the right to

allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

116.     Ford's acts, omissions, misrepresentations, practices, and non-disclosures alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that Ford's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

117.     As stated herein, Plaintiffs allege violations of consumer protection, unfair competition, and truth-in-advertising laws in California resulting in harm to consumers. Plaintiffs assert violations of the public policy by engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. The conduct constitutes violations of the unfair prong of the UCL. There were reasonably available alternatives to further Ford's legitimate business interests, other than the conduct described herein.

118.     Plaintiffs and the Class have been damaged by said practices in that they relied on Ford's misrepresentations and omissions regarding the Vehicles' fuel economy when purchasing or leasing the Vehicles. Pursuant to California Business and Professions Code §§17200 and 17203, Plaintiffs, on behalf of themselves and all others similarly situated, seek relief as prayed for below, including judgment and equitable relief against Ford and an order requiring Ford to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Ford to engage in a corrective marketing campaign.

## SECOND CAUSE OF ACTION
### (Violation of California Business & Professions Code §17500, *et seq.*, False Advertising Laws)
### on Behalf of All Plaintiffs or, Alternatively, the California Plaintiffs

119.    Plaintiffs and the Class incorporate by reference the previous allegations as if fully set forth herein.

120.    Ford disseminated advertisements in print, online, and on television formats containing materially misleading and deceptive information and omitted material information, as discussed throughout this Complaint, for purposes of inducing customers to purchase and/or lease the Vehicles, in violation of California Business and Professions Code §17500, *et seq.* Ford have spent millions of dollars to advertise, including through its websites on the Internet, to call attention to or give publicity to Ford's Vehicles' fuel economy through its advertising campaign. Ford uniformly and falsely advertise the fuel efficiency of the Vehicles as described herein.

121.    The above-described false, misleading, and deceptive advertising Ford disseminated continues to have the likelihood to deceive.

122.    In making and disseminating the statements alleged herein, Ford should have known their advertisements were untrue and misleading in violation of California Business and Professions Code §17500, *et seq.* Plaintiffs and Class members based their decisions to purchase and/or lease their Vehicles in substantial part on Ford's misrepresentations and omitted material facts. The revenues to Ford attributable to products sold in those false and misleading advertisements amount to millions of dollars for their Vehicles. Plaintiffs and the Class were injured in fact and lost money or property as a result, both in terms of purchase price, diminution of value, and the differential higher cost of fuel.

123.    Plaintiffs and the Class have been damaged by said practice and seek relief as prayed below.

### THIRD CAUSE OF ACTION
#### (Violation of California Civil Code §1750 *et seq.*, Consumer Legal Remedies Act)
#### on Behalf of All Plaintiffs or, Alternatively, the California Plaintiffs

124.    Plaintiffs and the Class incorporate by reference the previous allegations as if fully set forth herein.

125.    The following definitions come within the meaning of the Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §1750, *et seq.*):

    a.  The members of the Class, all of whom purchased and/or leased the Vehicles manufactured and sold by Ford are "consumers" (Cal. Civ. Code §1761(d));

    b.  Ford is a "person" (Cal. Civ. Code §1761(c));

    c.  Plaintiffs' and each and every Class members' purchase and/or lease of the Vehicle constitute a "transaction" (Cal. Civ. Code §1761(e)); and

    d.  The Vehicles are "goods" (Cal. Civ. Code §1761 (a)).

126.    Ford's acts and practices as discussed throughout this Complaint constitute "unfair or deceptive acts or practices" by Ford that are unlawful, as enumerated in California Civil Code §1770(a).

127.    Such misconduct materially affected the purchasing decisions of Plaintiffs and the members of the Class as Plaintiffs and the Class relied on Ford's misstatements and omissions regarding the Vehicles' fuel economy when purchasing or leasing the Vehicles.

128.    Plaintiffs seek restitution and injunctive relief pursuant to California Civil Code §1780.

129.    On or about December 11, 2012, Plaintiff Pitkin notified Ford of the unlawful acts and practices described above by written notice which contained a demand that Ford pay damages in