UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*In re:*

*Ford Fusion and C-MAX Fuel Economy Litigation,*

*This Document Relates to All Actions.*

Case No. 13-MD-2450 (KMK)

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    BACKGROUND .....................................................................................................2

    A.    Brief Summary of the Plaintiffs' Factual Allegations ...............................2

    B.    The Court's Ruling on Ford's Earlier Motion to Dismiss ........................3

III.    STANDARD OF REVIEW .....................................................................................4

IV.    ARGUMENT ..........................................................................................................5

    A.    Plaintiffs Do Not Seek to Revive Previously Dismissed Claims.............................5

    B.    The Exemplar Advertisements Attached to the Complaint Are Actionable............5

        1.    Advertisement 1: "Freight".............................................................5

            a.    The "Freight" Advertisement Suggests the 2013 C-MAX Can Deliver 47 MPG in the Real World............................................5

            b.    Advertisement 1 Conveys Factual Claims, Not Puffery.................7

            c.    Plaintiffs' Reliance Caused Their Injuries......................................9

        2.    Advertisement 2: "Weeee" ...........................................................10

            a.    Ad 2 Represents that the 2013 C-MAX Can Deliver 47 MPG in the Real World...............................................10

            b.    Ad 2 Is Actionable Pursuant to This Court's Opinion..................12

            c.    Ad 2 Conveys Factual Claims, Not Puffery...................................12

        3.    Advertisement 3: "Hybrid Games"..............................................13

            a.    Ad 3 Likewise Implies Real World Performance and Is Therefore Actionable....................................................13

            b.    Plaintiffs Sufficiently Pleaded Injury Resulting from Their Reliance on Ad 3 and Ford's Other Advertisements. ....................13

        4.    Advertisement 4: The Fusion Hybrid Brochure.........................15

i

**Page**

a.     Ad 4 Deceptively Claims that the 2013 Fusion Hybrid Can Deliver 47 MPG in the Real World. ...............................................15

a.     Ad 4 Is Actionable Under This Court's Opinion. ...........................16

5.     Advertisement 5: Fusion Hybrid Video Advertisement ...........................17

a.     Ad 5 Advertises the 2013 Fusion Hybrid's Fuel Economy in Real-World Driving Conditions...................................................17

b.     Ford's Preemption Arguments Should Be Rejected. ....................18

6.     Advertisement 6: The C-MAX Brochure ...................................................18

a.     Ad 6 Conveys that the 2013 C-MAX Can Deliver 47 MPG in the Real World, Besting the Prius................................................18

7.     Advertisement 7: "Wrong Direction" .......................................................19

a.     Advertisement 7 Represents the 2013 Fusion Hybrid's Fuel Economy in Real-World Driving Conditions. ..............................20

b.     Advertisement 7 Makes Factual Claims Going Beyond Puffery...............................................................................................20

C.     Plaintiffs' Common-Law Fraud Claims Continue to Be Well-Pleaded.................21

D.     The Court Should Not Dismiss or Narrow Plaintiffs' Well-Pleaded Breach of Express Warranty Claims. ..............................................................................22

1.     There Is No Reason to Dismiss "Part" of Plaintiffs' Express Warranty Claim...................................................................................22

2.     Plaintiffs' Breach of Express Warranty Claims Are Not Preempted and Satisfy the Pleading Standard of Rule 8(a). .........................................24

3.     Plaintiffs Fulfilled the Pre-Suit Requirements for Their Breach of Express Warranty Claims. .........................................................................24

4.     Privity Is Not Required Under Oregon Law. .............................................25

E.     Plaintiffs' Unjust Enrichment Claims Are Sufficiently Pleaded. ..........................27

1.     Plaintiffs Unjust Enrichment Claims Are Pleaded with Specificity. .........27

**Page**

2.      Although Plaintiffs May Have an Adequate Legal Remedy, They Permissibly Plead Alternative Theories of Relief.....................................28

3.      Plaintiffs Have Alleged that Ford Received a Direct Benefit from Plaintiffs. .................................................................................................29

4.      The Illinois Plaintiffs Adequately Allege Their Unjust Enrichment Claims. ...............................................................................................30

V.      CONCLUSION............................................................................................30

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Italian Pasta Co. v. New World Pasta Co.*,
371 F.3d 387 (8th Cir. 2004) ...........................................................................8

*Bailey v. Atl. Auto. Corp.*,
992 F. Supp. 2d 560 (D. Md. 2014) .................................................................10

*Bank of Am. Corp. v. Gibbons*,
918 A.2d 565 (Md. 2007) .................................................................................29

*CHMM, LLC v. Freeman Marine Equipment, Inc.*,
No. 3:12-CV-01484-ST, 2013 WL 3025137 (D. Or. June 14, 2013) ...................27

*Dravo Equip. Co. v. German*,
698 P.2d 63 (Or. Ct. App. 1985)......................................................................26

*Ebin v. Kangadis Food, Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014), *reconsideration denied*,
No. 13 CIV. 2311 JSR, 2014 WL 1301857 (S.D.N.Y. Mar. 19, 2014)...................14

*Elkind v. Revlon Consumer Prods. Corp.*,
No. 14-CV-2484 (JS)(AKT), 2015 WL 2344134 (E.D.N.Y. May 14, 2015)...........25

*Fairchild Heights Residents Ass'n, Inc. v. Fairchild Heights, Inc.*,
82 A.3d 602, 623 (Conn. 2014) .......................................................................10

*Gastaldi v. Sunvest Resort Cmtys., LC*,
709 F. Supp. 2d 1299 (S.D. Fla. 2010) ............................................................15

*Global Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006)..............................................................................4

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014)...........................................................27

*Guido v. L'Oreal, USA, Inc.*,
No. CV 11-1067 (CAS), 2013 WL 3353857 (C.D. Cal. July 1, 2013)...................14

*Guzman v. Concavage Marine Constr., Inc.*,
Case No. 14-CV-8587 (KMK), 2016 WL 1273285 (S.D.N.Y. Mar. 31, 2016) .................7, 18

*Halebian v. Berv*,
644 F.3d 122 (2d Cir. 2011)...............................................................................4

**Page**

*Hinchliffe v. Am. Motors Corp.*,
   440 A.2d 810 (Conn. 1981) ....................................................................10

*Howard v. Turnbull*,
   258 S.W.3d 73 (Mo. Ct. App. 2008)........................................................28

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) ....................................................27

*Hunter v. Woodburn Fertilizer, Inc.*,
   144 P.3d 970 (Or. Ct. App. 2006)............................................................26

*Hurst v. Nissan N. Am., Inc.*,
   No. WD78665, 2016 WL 1128297 (Mo. Ct. App. Mar. 22, 2016) ...........8

*Icon Health & Fitness, Inc. v. Nautilus Grp., Inc.*,
   No. 1:02CV00109TC, 2004 WL 6031124 (D. Utah Dec. 21, 2004)..........9

*In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*,
   No. 1:14-CV-3722, 2015 WL 4591236 (D.N.J. July 29, 2015) ..............25

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,
   955 F. Supp. 2d 1311 (S.D. Fla. 2013) ...................................................10

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*,
   No. 15C1364, 2016 WL 74671 (N.D. Ill. Jan. 7, 2016) ....................23, 25

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) .............................................................23

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014)......................................................10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &
   Products Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..............................................23, 27

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
   496 F.3d 229 (2d Cir. 2007).......................................................................5

*Kelly v. Olinger Travel Homes, Inc.*,
   117 P.3d 282 (Or. Ct. App. 2005).............................................................26

**Page**

*Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*,
No. 11 Civ. 3327 (ER), 2013 WL 417406 (S.D.N.Y. Feb. 4, 2013) .........................................5

*Kraft, Inc. v. F.T.C.*,
970 F.2d 311 (7th Cir. 1992) ........................................................................7

*Larrison v. Moving Floors, Inc.*,
873 P.2d 1092 (Or. Ct. App. 1994)......................................................................26

*Marty H. Segelbaum, Inc. v. MW Capital, LLC*,
673 F. Supp. 2d 875 (D. Minn. 2009)..................................................................29

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
227 F.3d 489 (5th Cir. 2000) .......................................................................8, 9

*Powers v. Lycoming Engines*,
No. 06-2993, 2007 WL 2702705 (E.D. Pa. Sept. 12, 2007)....................................................30

*Sanchez v. Ford Motor Co.*,
No. 13-CV-01924-RBJ, 2014 WL 2218278 (D. Colo. May 29, 2014) ....................................23

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
737 F. Supp. 2d 380 (E.D. Pa. 2010) ..................................................................29

*Siemer v. Assocs. First Capital Corp.*,
No. CV97-281TUCJMRJCC, 2001 WL 35948712 (D. Ariz. Mar. 30, 2001)........................10

*Smith v. Wm. Wrigley Jr. Co.*,
663 F. Supp. 2d 1336 (S.D. Fla. 2009) ..............................................................10

*Spiel Assocs., Inc. v. Gateway Bookbinding Sys., Ltd.*,
No. 03-cv-4696, 2010 WL 546746 (E.D.N.Y. Feb. 16, 2010) ..................................................9

*St. John's Univ. v. Bolton*,
757 F. Supp. 2d 144 (E.D.N.Y. 2010) ................................................................29

*Stella v. LVMH Perfumes & Cosmetics USA, Inc.*,
564 F. Supp. 2d 833 (N.D. Ill. 2008) ................................................................26

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) ......................................................................15

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
497 F.3d 144 (2d Cir. 2007)........................................................................9

Page

*Transcience Corp. v. Big Time Toys, LLC*,
    50 F. Supp. 3d 441, 456 (S.D.N.Y. 2014)............................................................................28

*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
    No. 12-cv-6811, 2013 WL 791462 (S.D.N.Y. Mar. 5, 2013)...................................................9

*Yung Kim v. Gen. Motors*, *LLC*,
    99 F. Supp. 3d 1096, 1105 (C.D. Cal. 2015) .............................................................3, 6, 16

**STATUTES, RULES AND REGULATIONS**

Or. Rev. Stat. Ann. § 72.3130(1)(a) ............................................................................................26

U.C.C. § 2-313 ...........................................................................................................................26

U.C.C. § 2-714 ...........................................................................................................................24

Federal Rule of Civil Procedure
    Rule 8 ..............................................................................................................10, 24, 28, 29
    Rule 9(b) ...........................................................................................................3, 10, 22, 28
    Rule 12(b)(6)...................................................................................................................4, 5

## I.     INTRODUCTION

Last November, this Court issued an 82-page Opinion that seemed to obviate the need for further pleading-stage motion practice. The Court held that while Ford would not be liable for merely listing federally-required disclosures about fuel efficiency, Plaintiffs had stated viable claims that Ford had voluntarily gone further in its advertising by making representations about what its hybrids could achieve in real-world driving conditions. (ECF No. 82 ("Op.") at 65-66.)

Rather than accepting the Court's Opinion, Ford now seeks to relitigate it. Ford argues, for example, that preemption applies with respect to any ad that contains a federal disclosure. The Court held otherwise, rejecting the notion that "the inclusion of an EPA-estimate-related disclosure in an advertisement renders the entire advertisement, no matter its content, non-actionable." (*Id.* at 66-67.) Ford also again challenges a variety of the ads, including the "Hybrid Games" advertisement, even though the Opinion cites that advertisement as the "best example" in the complaint of an actionable ad. (*Id.* at 65.)

Ford's other tactic is to construe the facts pleaded in the complaint in its own favor, rather than, as required at the pleading stage, in Plaintiffs' favor. For example, Ford argues that various advertisements do not make real world promises, even though the ads say things like: "47 mpg in the city and on the highway? Yes, it's true," and "With up to 47 city and 47 hwy mpg, [the C-MAX is] more fuel efficient than Toyota Prius v." These factual arguments are for trial, not a motion to dismiss. So too for Ford's argument that Plaintiffs have not been injured. Ford argues that injury turns on each individual vehicle's gas numbers, but Plaintiffs intend to prove that Ford's deceptive advertising drove up the sales price for all of the vehicles. In other words, Ford's broken promises caused each Plaintiff to spend (and, therefore, Ford to receive) more money than would have otherwise changed hands. Those allegations, taken as true as they must be, are enough to establish damages. Nor do Ford's attacks on Plaintiffs' common-law

claims of fraud, breach of express warranty, and unjust enrichment fare any better, as they too seek to unwind this Court's prior rulings and supply inadequate grounds to dismiss or narrow Plaintiffs' claims. In sum, Plaintiffs respectfully submit that Ford's motion should be denied in full.

## II.     BACKGROUND

### A.     Brief Summary of the Plaintiffs' Factual Allegations

Given the parties' prior briefing and the Court's earlier ruling, Plaintiffs provide a mere refresher of the key facts: In 2013, after several generations of Ford hybrids failed to compete with other manufacturers' hybrids, Ford launched a nationwide "transmedia" advertising campaign carefully designed to spread a single, uniform message. (¶¶2-3, 41-44.)[1] Ford claimed its 2013 model year hybrid vehicles, the Ford Fusion Hybrid and C-MAX, were capable, ***in the real world,*** of delivering 47 miles per gallon (MPG) in the city, 47 on the highway, and 47 combined. (¶¶3, 41-47, 53-62.) Ford's campaign signaled to potential hybrid buyers that Ford hybrids had surpassed the competition, such as the previously-dominant Toyota Prius. (¶45.)

Ford's campaign worked: its share of the hybrid market ballooned from a paltry 3 percent to 16 percent. (¶¶4, 45-47.) The problem for Fusion and C-MAX owners and lessees, however, is that the fuel economy Ford promised over and over again in the campaign—47 combined MPG in real world driving conditions—was a chimaera. (¶¶5, 81-90.) Both drivers and independent automotive professionals, such as *Automotive News*, *Consumer Reports,* and *Autoblog*, complained that neither the Fusion Hybrid nor the C-MAX performed as advertised in real world driving conditions. (¶¶83-87.) In a concession that these complaints were valid, Ford offered some technical modifications and "goodwill" payments, and belatedly halted its misleading ad

---

[1] All cites to "¶__" and "Ex. _" reference paragraphs in or exhibits to the Consolidated Second Amended Class Action Complaint and Demand for Jury Trial. (ECF No. 84 ("SAC").)

campaign. (¶¶6, 81-97.) None of Ford's after-the-fact conduct changes the fact that class vehicle owners and lessees spent more on their vehicles than they would have if Ford had not engaged in a widespread and misleading ad campaign. (¶¶8, 97.)

### B. The Court's Ruling on Ford's Earlier Motion to Dismiss

In its Opinion issued in November 2015, the Court concluded that while the preemption doctrine bars claims that rest solely on statements made in Monroney stickers and other federally mandated disclosures, Plaintiffs' claims based on Ford's statements that go beyond federally mandated mileage disclosures are **not** preempted:

> Plaintiffs' allegation that **Ford did not only rely on the EPA estimate, but also guaranteed real-world fuel economy based upon it**, is an allegation that goes "beyond" that estimate. The Court therefore concurs with holdings of other courts that considered similar allegations, namely that advertisements functioned to guarantee specific, real-world performance, and concludes that **such claims are not preempted**.

(Op. at 53.)[2] The Court noted that nothing in the regulatory scheme precludes states "from barring the **misuse** of EPA fuel efficiency data in advertising or other promotional materials." (*Id.* at 56 (quoting *Yung Kim v. Gen. Motors*, *LLC,* 99 F. Supp. 3d 1096, 1105 (C.D. Cal. 2015)).)

The Court also held that Plaintiffs had properly pleaded the state-law consumer protection claims arising from Ford's advertising statements, even to the extent that Rule 9(b) applied. (*Id.* at 61-69.) Specifically, the Court held that by targeting Ford representations that went beyond the EPA estimates, Plaintiffs "sufficiently distinguished these additional representations from the mere use of EPA estimates in their papers." (*Id.* at 65.) The Court found that the "Hybrid Games" advertisement—attached to the SAC as Exhibit 3—exemplified these sorts of additional representations,

---

[2]   Emphasis added and internal citations are omitted unless otherwise noted.

given ***the purpose of the advertisement is to visually illustrate the impact of the difference in real-world fuel economy*** between the C–Max and Prius v in the course of regular driving. . . . In fact, after familiarizing the viewer with the "specs," namely EPA-estimated fuel economy, the narrator indicates that the purpose of the competition between the C–Max and Prius v is to see if the difference in the specs proves ***true in actual use***. . . . Additionally, while the FTC-mandated disclosure is present in most of the Hybrid games advertisement (and the other advertisements at issue), Defendant offers no response to Plaintiffs' argument that ***the use of this disclaimer (i.e., "actual mileage may vary") does not inoculate those representations***, as they do not contradict the representation.

(*Id.* at 65-66.) In dismissing Plaintiffs' consumer protection claims with leave to amend, the Court permitted Plaintiffs ***only*** to specify particular advertisements on which the Plaintiffs relied. (*Id.* at 69, 81.)

The Court also ruled on Plaintiffs' fraud, express warranty, and unjust enrichment claims. As to fraud, the Court found that Plaintiffs "alleged enough facts to survive Defendant's Motion." (*Id.* at 71.) As to breach of express warranty, the Court rejected Ford's argument—nevertheless advanced again in Ford's present motion—that Plaintiffs' express warranty claims are preempted because the "advertising . . . contains federally mandated EPA disclosure language." (*Id.* at 73.) The Court ruled, to the contrary, that "[g]uarantees ***beyond*** a mere disclosure, ***namely the alleged statements that Plaintiffs specifically challenge here***, may still create such a warranty." (*Id.* (first emphasis in original).) Finally, as to unjust enrichment, the Court dismissed the claim under the common law of California and New York, but sustained it under the common law of Florida. (*Id.* at 77-79.)

## III.   STANDARD OF REVIEW

"[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'" *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

- 4 -

The Court must do so "without regard for the weight of the evidence that might be offered in support of Plaintiff's claims." *Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*, No. 11 Civ. 3327 (ER), 2013 WL 417406, at *5 (S.D.N.Y. Feb. 4, 2013). Thus, "[i]n considering a [Rule 12(b)(6)] motion to dismiss, the court is to accept as true all facts alleged in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

## IV.    ARGUMENT

### A.    Plaintiffs Do Not Seek to Revive Previously Dismissed Claims.

Ford's lead argument is that Plaintiffs are improperly attempting to revive claims that the Court dismissed with prejudice. (ECF No. 101 ("Def. Br."), at 4-5.) As Plaintiffs explained in their pre-motion letter, however, the reason they did not excise these claims from their complaint is that they wanted to comply with the Court's instruction to amend the complaint "only to specifically allege the advertisements that each of these Plaintiffs relied upon." (ECF No. 87 at 2.) Plaintiffs are not asking the Court to reconsider its ruling with respect to those claims.

### B.    The Exemplar Advertisements Attached to the Complaint Are Actionable.

#### 1.    Advertisement 1: "Freight"

##### a.    The "Freight" Advertisement Suggests the 2013 C-MAX Can Deliver 47 MPG in the Real World.

Plaintiffs Holman, Tibbetts, Oldcorn, Cole, Belden, Broome, De Vito, Fellows, and Hoyos all relied on the television and online video advertisement attached to the complaint as Exhibit 1. (¶¶13, 18, 20-21, 23, 27, 29-31.)

The "Freight" ad opens with a cartoon of a driver getting into a cargo-laden C-MAX, starting it up, and then whizzing past a Prius as the narrator intones: "C-MAX also beats Prius v with better MPG." (*Id.*, 0:17-20; Fig. A, *infra*.) The only contemporaneous disclaimer states

"Optional features shown." The cartoon C-MAX then morphs into a real-world C-MAX and, two seconds after saying the C-MAX "beats the Prius v with better MPG," the narrator invites viewers to "Say hi to the 47 combined MPG C-MAX Hybrid" as two chyrons appear. (*Id.*, 0:22-



**Figure A**

27.) In large, bold type, the words "47 combined MPG | Ford C-MAX Hybrid" fly in from off-screen and settle just above the real-world C-MAX as it speeds along a city street. (*Id.*, 0:25-27; Fig. B, *infra.*) In smaller type and below the C-MAX, the federally mandated disclaimer then fades in, saying: "EPA-estimated 47 city/47 hwy/47 combined mpg. Actual mileage will vary." (*Id.*, 0:25-27.)

In its briefing, Ford singles out just a few words in the ad, focusing in particular on the isolated word "better." (*See*, *e.g.*, Def. Br. at 6 (quoting only a snippet of the narration and the EPA disclaimer).) But consumers are exposed to entire advertisements, not words scrutinized in artificial isolation. (*See* Op. at 65-66 (holistically examining "Hybrid Games" ad, Ex. 3)); *see also Yung Kim*, 99 F. Supp. 3d at 1108 (statements can mislead reasonable consumer "whether

- 6 -

they be made through word or illustration"). This ad, when viewed as a whole, epitomizes the message underpinning Ford's entire "47" campaign—that by buying a 2013 Ford hybrid, consumers could enjoy a high-performance, roomy car that is nevertheless capable of 47 MPG in



**Figure B**

real world driving conditions—even though Ford knew, and has since acknowledged, that the C-MAX does not achieve anything like 47 MPG. (¶¶2-5, 53-62 (Ford's "47" message); *id.*, ¶¶6, 88-93 (Ford knew).) Because this message goes beyond mandatory disclosures and implies real-world performance, Plaintiffs' claims founded on this ad are actionable. To the extent Ford attempts to re-characterize the ad to suit its position, the Court should "draw[] all reasonable inferences in favor of the plaintiff" at this stage. *E.g.*, *Guzman v. Concavage Marine Constr. Inc.*, Case No. 14-CV-8587 (KMK), 2016 WL 1273285, at *2 (S.D.N.Y. Mar. 31, 2016).

  b.      **Advertisement 1 Conveys Factual Claims, Not Puffery.**

Non-actionable puffery "comes in at least two possible forms: (1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying;

or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000). On the other hand, "[i]f a statement is a specific, measurable claim or can be reasonably interpreted as being a factual claim, i.e., ***one capable of verification***, the statement is one of fact" and hence actionable. *Hurst v. Nissan N. Am., Inc.*, No. WD78665, 2016 WL 1128297, at \*6 (Mo. Ct. App. Mar. 22, 2016) (quoting *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004)).

Contrary to Ford's characterization of the "More Space" advertisement, the ad conveys specific, measureable promises—namely, that in real-world driving conditions, the C-MAX is capable of achieving 47 MPG and thus is more fuel efficient than the Toyota Prius. Rather than dealing with the ad's message as a whole—which was carefully crafted as part of Ford's singularly-themed ad campaign—Ford focuses instead on the ad's use of the word "better." But, importantly, the ad doesn't stop at saying C-MAX is "better." It elaborates precisely *how* the C-MAX is better: it "beats Prius v ***with better MPG***." (Ex. 1, at 0:17-20 (emphasis supplied).) The ad makes plain that the reason C-MAX's mileage is better than that of the Prius is that the C-MAX achieves a "47 combined MPG." (*Id.* at 0:22-27.) In an ad pitching high-MPG hybrids, a statement of "better" fuel economy than a named competitor, buttressed with a specific, numeric claim of real-world mileage, is a verifiable and therefore actionable statement. *Compare U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-cv-6811, 2013 WL 791462, at \*6 (S.D.N.Y. Mar. 5, 2013) ("representations about the specific characteristics of a service or product are generally held not to constitute puffery"); *Spiel Assocs., Inc. v. Gateway Bookbinding Sys., Ltd.*, No. 03-cv-4696, 2010 WL 546746, at \*10 (E.D.N.Y. Feb. 16, 2010) ("Puffery is distinguishable from misdescriptions or false representations of specific characteristics of a product."); *with*

- 8 -

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) ("we characterized puffery as subjective claims about products, which cannot be proven either true or false").

Nor do any of Ford's puffery cases hold that the term "better" is, as Ford suggests, somehow non-actionable as a matter of law. Rather, those cases illustrate the fact-specific nature of puffery analysis. *See, e.g.*, *Icon Health & Fitness, Inc. v. Nautilus Grp., Inc.*, No. 1:02CV00109TC, 2004 WL 6031124, at *21, *23 (D. Utah Dec. 21, 2004) (statement that weightlifting machine with cables was "better" than one with rods was puffery); *Pizza Hut*, 227 F.3d at 499 (claim of "Better Ingredients. Better Pizza" was puffery because "[w]hat makes one food ingredient 'better' than another comparable ingredient, ***without further description***, is wholly a matter of individual taste or preference not subject to scientific quantification").

### c.      Plaintiffs' Reliance Caused Their Injuries.

In an argument that recurs throughout Ford's brief, Ford contends that Plaintiffs fail to explain how the statements in Ford's ads are false or how they were injured. (Def. Br. at 7-8.) This argument stands in significant tension with the Court's earlier finding that, with respect to Ford's advertisements, Plaintiffs have already stated "all that is required under Rule 9(b)." (Op. at 67; *see also id.* at 62 n.13 (recognizing that Rule 8(a) applies to New York claims).)

More than that, Ford ignores well-pleaded facts in the complaint: each Plaintiff alleges who made the false statements (Ford), where he or she was exposed to the false statements (*e.g.*, Advertisement 1), and when they were exposed (prior to purchasing a C-MAX on the dates set forth for each Plaintiff). (¶¶13-15, 18, 20-21, 23-24, 27, 29-31, 34.) Plaintiffs allege they would not have purchased a C-MAX but for their reliance on Ford's deceptive advertising. (*Id.*) And finally, Plaintiffs allege that Ford's ads were deceptive because the C-MAX is not capable of achieving 47 MPG in the real world, beating the Prius, so Plaintiffs were injured at the point of

sale when they overpaid for a deceptively-hyped vehicle, which—had it been marketed in an honest manner—would have sold for far less money than Plaintiffs paid. (¶¶8, 82, 97.)[3]

### 2. Advertisement 2: "Weeee"

Plaintiffs Klafter and Cole both relied on "Weeee," the video advertisement for the 2013 Ford C-MAX attached to the complaint as Exhibit 2. (¶¶14, 21; Ex. 2.)

#### a. Ad 2 Represents That the 2013 C-MAX Can Deliver 47 MPG in the Real World.

Like Advertisement 1, this ad conveys the overarching message of Ford's "47" campaign: by buying a 2013 Ford hybrid, consumers could enjoy a high-performance, roomy car that is nevertheless capable of achieving 47 MPG, a higher MPG that Ford's past offerings and a higher MPG than Prius. (¶¶2-5, 53-62.) The ad opens with a cartoon of multiple vehicles zooming past a Prius v as the narrator says most hybrids "are just no fun to drive." (Ex. 2, 0:00-0:08.) A cartoonist's hand then appears, erases the Prius, and draws the outline of a Ford C-MAX as the cartoon driver cheers. (*Id.*, 0:09-11.) The driver then gets in the C-MAX and

---

[3] *See*, *e.g.*, *Siemer v. Assocs. First Capital Corp.*, No. CV97-281TUCJMRJCC, 2001 WL 35948712, at *4 (D. Ariz. Mar. 30, 2001) (injury occurs via reliance, and reliance occurs when consumer purchases product); *Fairchild Heights Residents Ass'n, Inc. v. Fairchild Heights, Inc.*, 82 A.3d 602, 623 (Conn. 2014) ("In other words, whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property.") (quoting *Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981)); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1333 (S.D. Fla. 2013) (plaintiffs adequately pleaded causation and damages by alleging they would not have bought products but for defendant's false representations and "were damaged in the amount of the difference between the premium price paid . . . and the price they would have paid for" non-premium products); *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1339-40 (S.D. Fla. 2009) (same); *Bailey v. Atl. Auto. Corp.*, 992 F. Supp. 2d 560, 577 (D. Md. 2014) (Maryland Consumer Protection Act's requirement of pleading actual injury or loss caused by misrepresentation satisfied by allegation of overcharge for purchase of vehicle); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 1000 (S.D. Cal. 2014) (plaintiffs sufficiently alleged loss causation under Missouri Merchandising Practices Act where they alleged defendant's false claim that gaming consoles were secure induced purchases thereof).

whizzes past the Prius. (*Id.*, 0:12-17.) The narrator says: "C-MAX has lots more horsepower than Prius v, a hybrid that C-MAX also bests in MPG. Say hi to the 47 combined MPG C-MAX hybrid." (*Id.*, 0:17-23.) During this narration, as in Advertisement 1, the cartoon C-MAX morphs into a real-world C-MAX; the EPA mileage disclosure appears in small type at the bottom of the screen. (*Id.*, 0:18-24.) The EPA mileage disclosure is then shoved aside by a chyron flying in from the right side of the screen. The chyron sets out in large, bold typeface the words "47 combined MPG | Ford C-MAX Hybrid." (*Id.*, 0:25-27; Fig. C, *infra*.) When viewed as a whole, Advertisement 2, much the same as Advertisement 1, goes well beyond mere recitation of the EPA estimated mileage—at one point literally replacing that estimate with Ford's own, voluntary statement of "47 combined MPG"—leaving viewers with the impression that a 2013 Ford C-MAX can achieve 47 MPG in the real world without sacrificing performance or roominess.



**Figure C**

### b.   Ad 2 Is Actionable Pursuant to This Court's Opinion.

Ford suggests that the EPA disclaimer's brief cameo in this ad preempts state-law consumer protection claims based on *any* statement in the ad. (Def. Br. at 9 ("Exhibit 2 contains federally mandated disclaimer language . . . . Therefore, any claim based on Exhibit 2 should be deemed preempted . . . .").) This Court has already held otherwise. (Op. at 53-54 ("any allegations that go beyond the mere disclosure—with appropriate caveats—of the estimated fuel economy of the Vehicles" are not preempted".)

### c.   Ad 2 Conveys Factual Claims, Not Puffery.

Just as Ford claims that use of the word "better" always constitutes puffery, it suggests that "best" is, as a matter of law, non-actionable. (Def. Br. at 9-10). As an initial matter, Ford is mistaken about which word its own ad uses: it is the verb *bests*, not *best*, the adjective Ford identifies. (Def. Br. at 9-10.) *Bests* means to outdo someone or something, and in Advertisement 2, Ford claims the C-MAX not only "bests" Prius, but specifically bests it "in MPG." This claim, especially considered in conjunction with animated and video depictions of the C-MAX driving past a Prius and the ad's heavy emphasis on "47 MPG," implies that that the C-MAX is capable of 47 MPG in real world driving conditions and is thus more fuel efficient than the Prius. (*See* ¶79.) That is a specific, provable, and hence actionable claim.[4]

---

[4] In connection with each of the seven advertisements attached to the complaint, Ford repeats the same argument that Plaintiffs did not sufficiently plead that the ad "caused them injury." (*E.g.*, Def. Br. at 10.) Plaintiffs responded to that argument above in Section IV.B.1.c, and respond again in Section IV.B.3.b, and so will not repeat those same points throughout their brief. The arguments Plaintiffs make in those sections specifically address advertisements for the C-MAX and apply with equal force to advertisements for the Fusion Hybrid.

3.       **Advertisement 3: "Hybrid Games"**

a.       **Ad 3 Likewise Implies Real World Performance and Is Therefore Actionable.**

The Court's prior Opinion conveys familiarity with the "Hybrid Games" video upon which Plaintiffs Holman, Pitkin, Broome, and Harkins relied. (¶¶13, 15, 27, 34; Ex. 3; *see also* Op. at 61-62 n.12, 65-66 (analyzing the ad).) In Hybrid Games, two sports announcers preside over a competition between the Ford C-MAX and Toyota Prius, first "familiarizing the viewer with the 'specs' [of the two cars], namely EPA-estimated fuel economy," and then watching the cars compete "to see if the difference in the specs proves true in actual use." (Op. at 66.)

Ford acknowledges that the Court already ruled that Plaintiffs "stated a claim to the extent they relied on the Hybrid Games video." (Def. Br. at 11.) Yet Ford suggests this ruling "should not extend" to the SAC, even though the allegations Ford attacks are the same as what the Court already sustained. (*Compare* ECF No. 51, ¶¶13, 15, 29, 40 *with* SAC ¶¶13, 15, 27, 34.) The Court should decline Ford's invitation to reconsider its prior ruling. As the Court already ruled, this advertisement's "purpose . . . is to visually illustrate the impact of the difference in real-world fuel economy between the C-MAX and the Prius v in the course of regular driving" and to see whether "the specs prove true in actual use." (Op. at 66.) As alleged in the complaint, these suggestions that the C-MAX can achieve 47 MPG in real-world conditions, beating the Prius, were false and misleading. (*E.g.*, ¶¶5-6, 62, 79, 89, 97.)

b.       **Plaintiffs Sufficiently Pleaded Injury Resulting from Their Reliance on Ad 3 and Ford's Other Advertisements.**

The crux of Ford's remaining attack on the Hybrid Games video, which Ford repackages slightly in its arguments about other ads attached to the SAC, is that Plaintiffs must allege (i) that

they "would have achieved 'better' fuel economy had [they] purchased a Prius,"[5] (ii) the exact mileage their particular Fords delivered, (iii) their individual driving styles, and (iv) the driving styles of other people who purchased a C-MAX. (Def. Br. at 11-12; *see also id.* at 7-8 (raising the same issue with respect to Ex. 1), 10 (Ex. 2), 14 (Ex. 4), 15-16 (Ex. 5), 16-17 (Ex. 6), 18 (Ex. 7).)

As an initial matter, Ford's argument disregards this Court's ruling that Plaintiffs already pleaded the who, what, when, where, and why of their claims based on the Hybrid Games video, as well as other "specific ads that made specific promises as to the real-world performance of the Vehicles." (Op. at 69 (emphases omitted).) Even more fundamentally, Ford's argument misses the nature of the economic injury that Plaintiffs allege. That injury is simply not dependent on the particular circumstances of each Plaintiff's driving conditions or styles, because Plaintiffs were injured at the moment they purchased their hybrids. Ford falsely advertised, and thus was able to over-price, its two mass-produced hybrid vehicles. This allowed Ford to reap a price higher than the true market value of the cars. (*See* ¶97 (Plaintiffs' cars are worth less than they would have been if they actually achieved 47 MPG "because the desirability and market value of vehicles is so heavily dependent on fuel economy").) Plaintiffs' injury—the payment of that falsely inflated price—is a direct result of Ford's false statements to them and the market writ large. That is a widely recognized form of economic injury. *E.g.*, *Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 (CAS)(JCx), 2013 WL 3353857, at *14 (C.D. Cal. July 1, 2013) (damages may be computed by taking the difference between the actual product purchased and the product consumer thought she was getting); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014) (same); *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 569 (S.D.N.Y. 2014),

---

[5] Ford ignores that Plaintiffs do allege that. (¶¶73, 79.)

*reconsideration denied,* No. 13 CIV. 2311 JSR, 2014 WL 1301857 (S.D.N.Y. Mar. 19, 2014) (same); *Gastaldi v. Sunvest Resort Cmtys., LC*, 709 F. Supp. 2d 1299, 1304 (S.D. Fla. 2010) (same). Plaintiffs have adequately alleged how their injuries stem from Ford's misleading "47" campaign.

### 4.    Advertisement 4: The Fusion Hybrid Brochure

Plaintiffs Fontenot, Wilkins, Dobbs, Weglarz, Romak, Majkrzak, Hendrickson, Goodale, and Druckenmiller—that is, every Plaintiff who purchased a Fusion Hybrid—saw and relied on Advertisement 4, a 16-page print brochure and spec sheet distributed to them by their respective Ford dealers. (¶¶16-17, 19, 22, 25-26, 28, 32-33.)

#### a.    Ad 4 Deceptively Claims That the 2013 Fusion Hybrid Can Deliver 47 MPG in the Real World.

The Fusion Hybrid brochure couches its promises in the context of various technical features in the vehicle. The first several pages of the brochure sprinkle specifications amidst its fuel efficiency promises to create the impression that Ford, unlike other car companies, will deliver on what it says. For example, the first interior pages not only promise improved aerodynamics, but warrant that Ford conducted "hundreds of hours of wind-tunnel testing" to achieve them. (Ex. 4 at 2.) Two pages later, Ford explains not only that the Fusion's gasoline model will get increased efficiency, but explains precisely how, detailing the features of its "EcoBoost" technology. (*Id.* at 4.)

After building up Ford's credibility for real world fuel efficiency capability, the brochure proclaims of the Fusion Hybrid: "***47 mpg in the city and on the highway? Yes, it's true***." (*Id.* at 5.) The brochure then explains why consumers could believe this "truth," reiterating that the Fusion Hybrid's "[c]ity mileage is best in class and 4 mpg more than its nearest class competitor"; describing a "powersplit hybrid architecture" that toggles between the vehicle's

electric motor and gas engine; claiming how the electric motor "allows Fusion Hybrid to operate gas-free at speeds of up to 62 mph"; characterizing the gas engine as "kick[ing] in as needed to power the battery and to enhance performance" (suggesting the gas engine seldom runs); and explaining how even the braking system helps to "maximize your mileage." (*Id.*) In a similar vein, Ford touts its novel "Efficiency Leaves" gauge, a vine-shaped MPG indicator designed to "coach you to get the most from every ride. The higher your mpg, the more lush your vine— giving you instant feedback to help you improve your efficiency." (*Id.*) Down at the very bottom of the page, the EPA disclaimer appears in miniscule type, but at the top of the page, Ford promises with large, bold letters, but no disclaimer: "47 MPG CITY/HWY." (*Id.*)

**b.      Ad 4 Is Actionable Under This Court's Opinion.**

Despite this litany of concrete reasons why a reasonable consumer reading Ford's brochure would expect the Fusion Hybrid to actually deliver the promised 47 combined MPG, Ford hangs its hopes on a footnote. (Def. Br. at 13-14.) Visible at the bottom of page 4, the footnote says: "EPA-estimated 47 city/47 hwy/47 combined mpg. Hybrid Class is Midsize Hybrid Sedans vs. 2012/2013 competitors." (Ex. 4, at 4.) The footnote does not warn that actual mileage may or will vary. (*Id.*) But more saliently, it is not enough for Ford to point to the EPA's estimate, for the Court has already rejected "the proposition that the inclusion of an EPA-estimate-related disclosure in an advertisement renders the entire advertisement, no matter its content, non-actionable." (Op. at 66-67.) Ford's attempt to reargue *Yung Kim* should be rejected, among other reasons, because that case "indicate[s] that specific promises that constitute representations ***beyond*** EPA estimates and related disclosures *are* actionable." *Id.* at 67 (emphasis in original) (citing, *inter alia*, *Yung Kim*, 99 F. Supp. 3d at 1108). Advertisement 4 contains exactly that kind of promise: the 2013 Fusion Hybrid is capable of 47 MPG in real world driving conditions.

- 16 -

### 5.    Advertisement 5: Fusion Hybrid Video Advertisement

Five of the same Plaintiffs who relied on Advertisement 4 (the Fusion Hybrid brochure just discussed) also viewed the video attached to the complaint as Exhibit 5. (¶¶16, 19, 25-26, 32; Ex. 5.) However, none of the Plaintiffs identifies Advertisement 5 as the *sole* actionable advertisement upon which they relied, so Ford's motion will not turn, one way or the other, on assessing Ad 5.

### a.    Ad 5 Advertises the 2013 Fusion Hybrid's Fuel Economy in Real-World Driving Conditions.

Ad 5, like the previous advertisements, focuses on real world driving characteristics. Its video footage depicts a white Ford Fusion cruising highways and city streets crowded with darker hued cars, as in frame after frame the darker cars vanish, leaving the white Fusion sole owner of the road. At the 0:20 second marker, the narration intones that the Fusion's hybrid model "doubles the fuel economy of the average vehicle" while a chyron appears at the bottom



**Figure D**

of the screen states "47city / 47 hwy / 47combined" with EPA disclaimer language. (Ex. 5, 0:20-24; Fig. D, *supra*.)

### b. Ford's Preemption Arguments Should Be Rejected.

Ford, again, focuses on the disclaimer rather than viewing the ad as a whole, arguing that "any claim based on this advertisement should be deemed preempted due to the presence of the federally mandated disclaimer." (Def. Br. at 15.) But the ad depicts a real-world Fusion, continuing to drive around a city as all other vehicles fall out of the picture. And in the same context, the ad claims the Fusion doubles other vehicles' fuel economy while depicting the 47 MPG text and disclaimer. Ford's goal in crafting this ad was to convey to consumers a real-world capacity to achieve 47 MPG fuel efficiency. (¶¶53, 62, 80.) Ford may have a different view about how a reasonable consumer would view this ad, but what impression the ad creates is a question for the trier of fact, not for a motion to dismiss—particularly for an advertisement that no Plaintiff relies on exclusively to state a claim. *Guzman*, 2016 WL 1273285, at *2.

### 6. Advertisement 6: The C-MAX Brochure

Plaintiffs Tibbetts, Cole, and Griffiths saw and relied on the 10-page print brochure and spec sheet distributed to them by their respective Ford dealers. (¶¶18, 21, 24, Ex. 6.)

### a. Ad 6 Conveys That the 2013 C-MAX Can Deliver 47 MPG in the Real World, Besting the Prius.

Similar to the Fusion Hybrid brochure examined above, the C-MAX brochure sprinkles authoritative-sounding facts among its promises to generate an aura of reliability about its fuel efficiency claims. Page 2 states, with respect to the C-MAX: "With up to 47 city and 47 hwy mpg,[1] it's more fuel efficient than Toyota Prius v." As Ford notes, the footnote disclaimer sets forth an EPA mileage estimate. But, as Ford fails to note, the claim to be "more fuel efficient than Toyota Prius v" sits beneath the heading: "The all-new C-MAX Hybrid: Reduced carbon

footprint. ***Real-car performance***." (Ex. 6, at 2); Fig. E, *infra* (detail of same).) Above that heading sits a circular logo festooned with a leaf, reiterating, consistent with the overarching "47" campaign and the C-MAX video advertisements in Exhibits 1 through 3, that the C-MAX offers "47 MPG city & hwy." (*Id.*)



**Figure E**

The additional representations in the brochure go beyond the bare language of the EPA estimate, and, as Plaintiffs allege, would lead a reasonable consumer to believe that Ford was promising "real-world" capability of achieving 47 MPG. Pursuant to this Court's prior Opinion, Ford cannot, by pointing over and over again to disclaimer language, inoculate itself from its myriad voluntary representations going beyond the subject of the disclaimer. (Op. at 65-66.)

### 7.    Advertisement 7: "Wrong Direction"

Two of the same Plaintiffs (Weglarz and Goodale) who relied on Advertisement 4 (the Fusion Hybrid brochure discussed above) also viewed the video attached to the complaint as Exhibit 7. ( ¶¶22, 32.) However, as with Advertisement 5 above, none of the Plaintiffs identifies

Advertisement 7 as the *sole* actionable advertisement that they relied upon, so Ford's motion will not turn, one way or the other, on assessing Ad 7.

### a.     Advertisement 7 Represents the 2013 Fusion Hybrid's Fuel Economy in Real-World Driving Conditions.

As in the video in Advertisement 5, Advertisement 7 features footage of darkly colored cars crowding the highway while a white Fusion Hybrid zips between them (though in this ad, the dark cars, instead of vanishing, all drive backwards while the Fusion speeds forward). (Ex. 7, 0:15-25.) The narration states: "The 2013 Ford Fusion: the most fuel efficient midsize hybrid in America." During some of this voiceover, there appears at the bottom of the screen, in white lettering set against a white car, the EPA estimate. (Ex. 7, 0:19-25; Fig. F.)

Ford is wrong to say that this ad makes no specific guarantees of real-world fuel economy. (Def. Br. at 17.) The ad promises Fusion Hybrid buyers "the most fuel efficient midsize hybrid in America," a description that specifies what is being measured (fuel economy), against whom (midsize hybrids), and where (America). Ford simply fails to recognize that there are ways to be specific in addition to offering a numeral.

### b.     Advertisement 7 Makes Factual Claims Going Beyond Puffery.

The level of specificity in the advertisement also demonstrates why Ford's promise is not puffery. The identity of the most fuel efficient midsize hybrid in America is not such a vague, general notion that no reasonable consumer could think Ford was serious when it claimed to sell that hybrid, nor does the presence of disclaimer language in this ad, or any of the others, effect the preemption of consumer protection claims that go beyond the disclaimer (as this ad does). The EPA disclaimer says nothing at all about which midsize hybrid in America is the most fuel efficient. (Ex. 7, 0:23; Fig. F, *infra*.) Additionally, the language must be viewed in the context of

- 20 -

footage of Fusion and non-Fusion vehicles driving on real-world streets, with the Fusion zooming ahead.



**Figure F**

### C. Plaintiffs' Common-Law Fraud Claims Continue to Be Well-Pleaded.

In its prior Opinion, the Court determined that Plaintiffs adequately pleaded their fraud claims "with the requisite specificity under Rule 9(b)." (Op. at 71.) As explained above, the current complaint certainly alleges no less than the earlier complaint. Plaintiffs, mindful of the Court's admonition to amend "only to specifically allege the advertisements that each of these Plaintiffs relied upon," *id.* at 81, have not altered the allegations supporting their common-law fraud claims nor the claims themselves. Ford should thus not be permitted a second attempt at dismissal of these claims In any event, Ford's arguments for dismissing Plaintiffs' fraud claims merely recycle the arguments Ford levied at Plaintiffs' consumer-protection claims. For the same

reasons set forth in Section IV.B, *supra*, those arguments also lack merit when directed at Plaintiffs' fraud claims.

> **D.      The Court Should Not Dismiss or Narrow Plaintiffs' Well-Pleaded Breach of Express Warranty Claims.**
>
>> **1.      There Is No Reason to Dismiss "Part" of Plaintiffs' Express Warranty Claim.**

To evaluate whether Plaintiffs have stated a valid express warranty claim, Ford asks the Court to restrict its analysis to the marketing messages contained in the seven advertisements Plaintiffs attached to their complaint. Plaintiffs do not object to Ford's request; they provided the Court with seven examples of ads that are actionable pursuant to the analysis in the Court's Opinion. (*See, e.g.*, Op. at 73 ("Guarantees ***beyond*** a mere disclosure, namely the alleged statements that Plaintiffs specifically challenge here, may still create [an express] warranty.").)

Where Ford goes too far, however, is where it asks this Court to dismiss Plaintiffs' express warranty cause of action to the extent it references any Ford marketing beyond those seven ads. (Def. Br. at 19-20.) There is no need to parse Plaintiffs' claim to that level; their express warranty claim is based on a single set of guarantees—namely, that Ford's 2013 hybrid vehicles can achieve 47 MPG in real-world conditions and are thus more efficient than the competition (including the Prius). As a result, from Plaintiffs' perspective, if the Court examines the seven attached ads and concludes that the messages conveyed in those ads give rise to a viable express warranty claim, that should be the end of the Court's analysis.

Ford, notably, provides no authority for its suggestion that the Court should further dissect Plaintiffs' warranty claim and dismiss just some parts of it. Instead, Ford cites two cases that stand for a more limited proposition: a named plaintiff cannot state a warranty claim by relying on advertisements that were disseminated only to other people. In *Sanchez v. Ford Motor Co.*, the first case cited by Ford, the plaintiff tried to manufacture standing by pointing to ads that

only other class members had viewed. No. 13-CV-01924-RBJ, 2014 WL 2218278, at *2-3 (D. Colo. May 29, 2014) ("[A] named plaintiff must demonstrate individual standing . . . he cannot lean on the supposed injuries of other members of the putative class."). Likewise in *Toyota*, the only other case Ford cites, the plaintiffs identified several advertisements but plaintiffs did not allege that any of the advertisements had been "disseminated to them," as opposed to other consumers. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145, 1183 (C.D. Cal. 2010). In this case on the other hand, Plaintiffs attached seven examples of advertisements disseminated to them; they are not asking the Court to uphold their warranty claim based on any other ads.

The *Toyota* case that Ford cites actually supports Plaintiffs' position. *Toyota* recognizes that Uniform Commercial Code ("UCC") express warranty claims do not require reliance—the question rather is whether any advertisements were "disseminated to" the named plaintiffs. *See* 754 F. Supp. 2d at 1182-83 & 1183 n.22. That proposition has also been recognized in this District. *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411-12 (S.D.N.Y. 2015) ("reliance is not an element of express warranty claims under California law"). The same UCC principle was recently acknowledged in another MDL case involving a variety of different states' laws. *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, No. 15C1364, 2016 WL 74671, at *25 (N.D. Ill. Jan. 7, 2016) (holding that, "although they provide a detailed list of the assertions made in Restore's advertising, Plaintiffs are not required to allege that they relied on each claim included on Restore's advertising"). So while Plaintiffs have attached specific advertisements they relied on, as the Court directed them to, they have not identified each advertisement that was disseminated by Ford. That task will require the completion of fact discovery.

In sum, because Plaintiffs have identified specific advertisements that they saw and which were disseminated to ***them*** as opposed to other class members only, there is no ground for dismissing a part of Plaintiffs' express warranty claim. To the extent any dispute exists as to the target audience to whom other advertisements (beyond the seven attached to the complaint) were disseminated, that can be addressed at class certification, once discovery about the reach of Ford's advertising is complete.

### 2. Plaintiffs' Breach of Express Warranty Claims Are Not Preempted and Satisfy the Pleading Standard of Rule 8(a).

Ford reprises the same arguments in the warranty context that they raised in the context of Plaintiffs' consumer protection claims. As detailed above, the Court's Opinion forecloses Ford's preemption arguments because Plaintiffs have identified specific and actionable guarantees in Ford's ads: Ford claims its 2013 hybrid vehicles can achieve 47 MPG in the real world, making them more efficient than the competition (including the Prius). (Op. at 53-54, 56-57.) And, as discussed above, Plaintiffs have pleaded how Ford's broken promises caused them harm: Ford's false fuel economy guarantees allowed Ford to charge more for the vehicles than it otherwise could have, at Plaintiffs' expense. (*See, e.g.*, ¶97); *see also* UCC § 2-714 (measure of damages for breach of warranty likewise turns on the difference in price in light of defendant's false guarantees).

### 3. Plaintiffs Fulfilled the Pre-Suit Requirements for Their Breach of Express Warranty Claims.

Ford also argues that Plaintiffs' express warranty claim should be dismissed because Plaintiffs purportedly failed to provide Ford with pre-suit notice. (Def. Br. at 21.) However, Plaintiffs alleged that all conditions precedent to Ford's liability under express warranty, "***including notice***," have been performed. (¶314.) As Ford knows, it has received repeated demands in connection with the fact that its 2013 hybrid vehicles are not capable of the fuel

economy promised by its advertising. To the extent Ford takes issue with the sufficiency of that notice, that question is one of fact, not suitable for resolution on a motion to dismiss. *In re Rust-Oleum*, 2016 WL 74671, at *20 (citing *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, No. 1:14-CV-3722, 2015 WL 4591236, at *27-28, n.41 (D.N.J. July 29, 2015) (collecting cases from 12 states)); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484 (JS)(AKT), 2015 WL 2344134, at *14 (E.D.N.Y. May 14, 2015).

Even if adequate notice had not been provided to Ford, Plaintiffs would be excused from any notice requirement by Ford's longstanding awareness generally of the inaccuracy of its promises. The Court in another products-liability MDL case recognized that a defendant's "actual knowledge" of the problems with its products excuses plaintiffs with express warranty claims from pre-suit notice requirements. *In re Rust-Oleum*, 2016 WL 74671, at *20. Plaintiffs allege again and again that Ford knew that its mass-produced class vehicles are not capable of 47 MPG in real-world driving conditions (¶¶5, 89, 95); knew it before release thanks to pre-release field testing (¶88); and certainly knew it once consumer complaints began to flow in (¶¶83-87). This would be enough to excuse pre-suit notice, had it not been provided. *See In re Rust-Oleum*, 2016 WL 74671, at *19 (consumer complaints and defendant's field testing supported inference that defendant knew of problems); *see also Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 837 (N.D. Ill. 2008) (pre-suit notice not required where plaintiff alleged defendant cosmetics maker "knew or should have known" of presence of lead in lipstick). In sum, Ford's knowledge that its 2013 hybrids could not get 47 combined MPG would have made any notice from Plaintiffs superfluous, even if Plaintiffs had not provided it (which they did).

### 4.    Privity Is Not Required under Oregon Law.

Ford argues that Plaintiff Goodale cannot state an express warranty claim because Ford did not sell Plaintiff his vehicle directly. The appellate courts of Oregon have made clear,

however, that privity is not a requirement to a breach of express warranty claim. *Larrison v. Moving Floors, Inc.*, 873 P.2d 1092, 1094 (Or. Ct. App. 1994) ("Privity of contract is not required."); *accord Kelly v. Olinger Travel Homes, Inc.*, 117 P.3d 282, 287 (Or. Ct. App. 2005); *Dravo Equip. Co. v. German*, 698 P.2d 63, 64 (Or. Ct. App. 1985). So long as a manufacturer disseminates a representation to the ultimate purchaser, that manufacturer must answer for breach of that warranty. *Larrison*, 873 P.2d at 1094 (enforcing warranties by component manufacturer to ultimate purchaser of trailer because manufacturer spoke with purchaser). Here, Goodale alleges that he bought his 2013 Ford Fusion at a Ford dealership after seeing and relying on Ford's promise of 47 combined MPG. (¶32.) Nothing about those allegations is insufficient under Oregon law. *See Kelly*, 117 P.3d at 287 (express warranty by motor home manufacturer "can extend to remote purchasers" even though dealership, not manufacturer, sold motor home to plaintiff).

Ford seeks to escape its warranty obligations with a single case, *CHMM, LLC v. Freeman Marine Equipment, Inc*., No. 3:12-CV-01484-ST, 2013 WL 3025137 (D. Or. June 14, 2013), but that case runs contrary to Oregon and UCC warranty law. In *CHMM*, the breach of warranty claim arose from the failure of a component part of a yacht—an interior door—that the plaintiff purchased as part of the yacht. The *CHMM* court, without citing any Oregon law, held that advertisements and schematics by the door maker could not form an express warranty, apparently assuming that Oregon law recognized only those warranties "negotiated between the parties." *See id.* at *3. That assumption conflicts with Oregon's version of UCC section 2-313, which provides that ***any*** specific guarantee that "becomes part of the basis of the bargain" can create an express warranty. Or. Rev. Stat. Ann. § 72.3130(1)(a); *see also  Hunter v. Woodburn Fertilizer, Inc.*, 144 P.3d 970, 973 (Or. Ct. App. 2006) (Oregon's "definition of  express warranty

broadly includes any description of the goods, affirmation of fact, or promise that becomes part of the basis of the bargain"); *In re Toyota*, 754 F. Supp. 2d at 1182-83 (recognizing that advertisements disseminated to plaintiffs would form part of the basis of the bargain under identical UCC statute). Here, Goodale clearly alleged the promises he received from Ford, and that he relied on those promises, making them part of the basis of his bargain. Nothing in Oregon law bars Goodale's claim.

### E.      Plaintiffs' Unjust Enrichment Claims Are Sufficiently Pleaded.

#### 1.      Plaintiffs Unjust Enrichment Claims Are Pleaded with Specificity.

While the law of unjust enrichment varies to some degree among states, typically a plaintiff need only plead that: 1) the defendant was enriched, 2) the enrichment was at plaintiff's expense, and 3) the circumstances were such that equity and good conscience require the defendant to make restitution. *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (citing *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013)).

Plaintiffs allege that Ford received a benefit in the form of money they spent buying their class vehicles. (¶¶13-34; *see also* ¶325 (Ford "generated millions of dollars of revenue" from its unlawful conduct).) Plaintiffs further allege that Ford derived that benefit from Plaintiffs unjustly, in that it was derived only after Ford deceptively marketed the fuel economy capabilities of its 2013 hybrids, driving up the market prices of those vehicles. (¶¶5-6, 62, 79, 89, 97; *see also* ¶¶325-26.) And Plaintiffs allege that Ford cannot fairly keep that compensation since it was derived from deceptive conduct. (¶327.) Accordingly, while the law of each state governs whether Rule 8(a) or 9(b) applies, Plaintiffs have pleaded sufficient facts to satisfy Rule 9(b) to the extent it applies. To the extent that Ford urges dismissal on the ground that its

advertisements were not misleading or actionable for other reasons, Ford is incorrect for the reasons set forth in Section IV.B, *supra*.

### 2. Although Plaintiffs May Have an Adequate Legal Remedy, They Permissibly Plead Alternative Theories of Relief.

Ford contends that Plaintiffs' unjust enrichment claim must be dismissed where Plaintiffs brought alternative legal claims for breach of express warranty or violation of a state consumer protection statute. The Federal Rules of Civil Procedure, however, permit pleading in the alternative. *See* Fed. R. Civ. P. 8. Rule 8 allows for the pleading of alternative legal theories even where those theories are inconsistent with each other. *Id.* (stating "[a] party may state as many separate claims or defenses as it has, regardless of consistency."). Alternative pleading has been sanctioned in this very context as well. *See, e.g., Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 456 (S.D.N.Y. 2014) ("courts in this Circuit allow for alternative pleading of unjust enrichment and contract claims"); *see also St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 184 (E.D.N.Y. 2010) ("Though some cases suggest that a plaintiff's mere allegation of an enforceable contract is enough to prevent him from even pleading an alternative claim for unjust enrichment, that position cannot be reconciled with the text of Rule 8(d), and is unpersuasive to this court's analysis.") (emphasis and footnote omitted); *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 880 (D. Minn. 2009) (rejecting motion to dismiss unjust enrichment claim on basis that plaintiff had a remedy available at law because "at this stage in the litigation, plaintiff is permitted to pursue alternative theories that would provide remedies at law and equity"); *Howard v. Turnbull*, 258 S.W.3d 73, 76 (Mo. Ct. App. 2008) (finding it allowable to plead in the alternative an unjust enrichment claim alongside a breach of contract claim).

### 3.    Plaintiffs Have Alleged That Ford Received a Direct Benefit from Plaintiffs.

Ford argues that certain states require a showing that Ford directly benefitted from Plaintiffs' vehicle purchases. There are ample allegations in the SAC demonstrating how Ford benefitted directly from Plaintiffs' purchases. Each Plaintiff bought or leased a new Ford vehicle directly from an authorized Ford dealership. (¶¶13-34.) The SAC details, moreover, how Ford's share of the hybrid market skyrocketed as a direct result of its misleading marketing of its 2013 hybrids. (*E.g.*, ¶¶3, 46-47; *see also* ¶325 (Ford "generated millions of dollars of revenue" by falsely advertising the fuel economy of its vehicles).) Ford would be hard pressed to explain how its ability to sell more vehicles at higher prices due to its deceptive marketing practices did not directly benefit its bottom line. The fact that Ford sells the new vehicles through its authorized dealerships, rather than on its own, does not alter that conclusion. *Bank of Am. Corp. v. Gibbons*, 918 A.2d 565, 571 (Md. 2007) ("a cause of action for unjust enrichment may lie against a transferee with whom the plaintiff had no contract, transaction, or dealing, either directly or indirectly"); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 438 (E.D. Pa. 2010) ("courts have held that Michigan does not require direct contact between the parties in order to state a claim for unjust enrichment") (collecting cases); *id. at* 443-44 ("Courts to have addressed this issue are in agreement that the key inquiry in determining whether a Pennsylvania unjust enrichment claim may proceed is whether the defendant received a benefit ***unjustly***, and that while ***direct*** conferral of a benefit is not required, the relationship between plaintiff and defendant may not be too remote."); *Powers v. Lycoming Engines*, No. 06-2993, 2007 WL 2702705, at *3 (E.D. Pa. Sept. 12, 2007) ("plaintiffs need not have purchased the product at issue directly from Lycoming to have 'conferred benefits on the defendant.'").

- 29 -

> **4.    The Illinois Plaintiffs Adequately Allege Their Unjust Enrichment Claims.**

Both of Ford's Illinois-specific arguments should be rejected.  First, Ford contends that, for the same reason Illinois Plaintiffs Cole and Weglarz's consumer protection claims fail, so too do their unjust enrichment claims. For the reasons discussed in Sections IV.B.1-2, IV.B.4, and IV.B.6-7, however, Ford has failed to show why their consumer protection claims should be dismissed.

Ford's other argument is that an Illinois unjust enrichment claim requires pleading that "Ford owed [Plaintiffs] an independent duty and failed to abide by that duty." (Def. Br. at 29.) Yet Plaintiffs made those very allegations. They allege that "Ford had a duty to provide honest and accurate information to its customers so that customers could make informed decisions on the substantial purchase of automobiles." (¶288.) And they allege throughout the SAC that Ford breached that duty by making deceptive and false fuel economy claims about its vehicles. Plaintiffs have thus sufficiently pleaded their unjust enrichment claim under Illinois law.

## V.    CONCLUSION

For the reasons set forth above, Ford's motion to dismiss should be denied in its entirety. To the extent that the Court grants any portion of Ford's motion, Plaintiffs respectfully request leave to amend.


DATED: May 2, 2016                        GIRARD GIBBS LLP

                                          /s/ *Eric H. Gibbs*
                                          ERIC H. GIBBS
                                          GEOFFREY A. MUNROE
                                          DAVID K. STEIN
                                          601 California Street, 14th Floor
                                          San Francisco, CA 94108
                                          Telephone: (415) 981-4800
                                          Fax: (415) 981-4846

- 30 -

ROBBINS GELLER RUDMAN & DOWD LLP
PAUL GELLER
STUART A. DAVIDSON
MARK DEARMAN
SHERI COVERMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Fax: (561) 750-3364

ROBBINS GELLER RUDMAN & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Fax: (631) 367-1173

ROBBINS GELLER RUDMAN & DOWD LLP
RACHEL L. JENSEN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Fax: (619) 231-7423

Co-Lead Counsel for Plaintiffs and the Class

MORGAN & MORGAN, P.C.
JOHN A. YANCHUNIS
RACHEL L. SOFFIN
One Tampa City Center, 7th Floor
Tampa, Florida 33602
Telephone (813) 275-5272
Fax: (813) 223-5402

MORGAN & MORGAN, P.C.
PETER G. SAFIRSTEIN
28 W. 44th St., Suite 2001
New York, NY 10036
Telephone (212) 564-1637
Fax: (212) 564-1807

MCCUNE WRIGHT, LLP
RICHARD D. MCCUNE

- 31 -

ELAINE S. KUSEL
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374
Telephone: (909) 557-1250
Fax: (909) 557-1275

SEEGER WEISS, LLP
SCOTT ALAN GEORGE
77 Water Street, 26th Floor
New York, NY 10005
Telephone: (215) 584-0700
Fax: (215) 584-0799

FARMER JAFFE WEISSING EDWARDS
FISTOS & LEHRMAN, P.L.
STEPHEN R. JAFFE
MARK FISTOS
SETH LEHRMAN
425 N. Andrews Avenue, Suite 2
Ft. Lauderdale, FL 33321
Telephone: (954) 385-8995
Fax: (954) 524-2822

THE STECKLER LAW GROUP
BRUCE W. STECKLER
MAZIN SBAITI
12700 Park Central Drive, Suite 1900
Dallas, TX 75251
Telephone: (972) 387-4040
Fax: (972) 387-4041

CADDELL & CHAPMAN
MICHAEL A. CADDELL
CYNTHIA B. CHAPMAN
CORY STEVEN FEIN
1331 Lamar Street, Suite 1070
Houston, TX 77010
Telephone: (713) 581-8295
Fax: (713) 751-0906

Plaintiffs Executive Committee