

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Mass Torts | Whistleblower | Class Action

November 17, 2016

**MEMO ENDORSED**

The Honorable Kenneth M. Karas
United States District Judge
United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, NY 10601-4150

   Re: ***In Re Ford Fusion and C-MAX Fuel Economy Litigation***
     Case No. 13-MD-2450 (KMK)
     Dispute re: Plaintiffs' Rule 30(b)(b) Deposition of Ford Motor Co.

Dear Judge Karas:

Pursuant to Local Civil Rule 37.2, Plaintiffs write to request a pre-motion discovery conference. Although the parties have been meeting and conferring since August 2016 on the issue, they have reached an impasse relating to five topics in Plaintiffs' Rule 30(b)(6) deposition notice of Defendant Ford Motor Company. Plaintiffs ask that the Court compel Ford to designate a witness prepared to testify on the disputed topics.

**Case Background:** This proposed class action arises from alleged misrepresentations Ford made in advertising the fuel economy in its 2013 Fusion Hybrid and C-Max Hybrid. Specifically, when Ford advertised the vehicles' fuel economy, it went beyond listing EPA fuel economy estimates, along with a disclaimer, instead representing to drivers that they could truly expect to achieve the EPA numbers ***in real-world driving***. Plaintiffs now seek discovery into the factual underpinnings of the alleged misrepresentations.

**The Discovery Dispute:** On July 19, 2016, Plaintiffs served Ford with a Rule 30(b)(6) deposition notice. (Ex. 1.) The deposition (in relevant part) is set for December 1, 2016.[1]

There are five deposition topics at issue—numbers 9 through 13. All five pertain to whether, and if so how, Ford came to believe that the EPA-estimates for its hybrid vehicles were accurate estimates of what drivers could achieve in real world driving. More specifically, the topics cover: (A) Ford's basis for the fuel economy estimates that appeared in its marketing (topic 12), (B) the tests and other methodologies used to forecast the vehicles' fuel economy (topic 9), (C) the Ford personnel who have knowledge of those tests and methodologies (topic 10), (D) what the anticipated fuel

---

[1] Lengthy delays by Ford in producing documents have led to the deposition date being postponed. Within just the past few weeks, for example, Ford has continued to produce thousands of pages of documents that are responsive to discovery requests served in March 2016.

One Tampa City Center | 201 North Franklin Street | 7th Floor | Tampa, FL 33602 | Ph: 813.223.5505 | www.ForThePeople.com

Atlanta, GA | Bowling Green, KY | Daytona Beach, FL | Fort Myers, FL | Jackson, MS | Jacksonville, FL | Kissimmee, FL | Lakeland, FL | Lexington, KY | Naples, FL | Nashville, TN
New York, NY | Memphis, TN | Orlando, FL | Plantation, FL | Sarasota, FL | St. Petersburg, FL | Tallahassee, FL | Tampa, FL | Tavares, FL | The Villages, FL | Winter Haven, FL

Case 7:13-md-02450-KMK   Document 127   Filed 11/29/16   Page 2 of 4
Case 7:13-md-02450-KMK   Document 125   Filed 11/17/16   Page 2 of 4

November 17, 2016
Page 2

economy actually was for the vehicles (11), and (E) any revisions to the fuel economy estimates made after the vehicles went on sale (topic 13). (*See* Ex. 1 at topics 9-13).

Ford objected in large part to the noticed topics on August 4, 2016. (Ex. 2.) Ford agreed to designate a witness to testify about (A) "the basis for the fuel economy statements in Ford's advertisements," and (E) "the changes in the EPA fuel economy estimates," including in connection with its "post-production testing."[2] (Ex. 2 at 7-8.) But Ford declined, and continues to decline, to offer a witness on:

- Ford's EPA-related fuel economy testing. (Ex. 2 at 7-8.)

- Any non-EPA testing or other methodologies used to predict fuel economy. (*Id.*)

- Which personnel have knowledge of the testing and methodologies. (*Id.*)

The parties have met and conferred since August on Ford's objections and have been unable to fully resolve the dispute. (*See* Exs. 3-6).

**Ford's EPA Testing Process Is Relevant:** Ford objects on relevance grounds to proffering a witness on its EPA testing, (Ex. 2 at 7), but its objection is based on a misreading of this Court's order on Ford's motion to dismiss the CAC (ECF 82). Ford argues that because "direct challenges to the EPA [estimates] are preempted" and Plaintiffs do not "challenge the accuracy of the estimates … or the manner in which they were calculated," (Ex. 2 at 7), Ford's EPA testing is irrelevant.

This Court did not wholesale bar claims related to EPA estimates. Instead, the Court held that state law claims predicated on EPA estimates *alone* are preempted, but that:

> Plaintiffs' allegation that ***Ford did not only rely on the EPA estimate, but also guaranteed real-world fuel economy based upon it***, is an allegation that goes "beyond" that estimate. The Court therefore concurs with holdings of other courts that considered similar allegations, namely that advertisements functioned to guarantee specific, real-world performance, and concludes that ***such claims are not preempted.***

(ECF No. 82 at 53 (emphasis added).)

---

[2] During the course of meet and confer calls and correspondence, Ford also agreed to tender a witness to testify about "the reference to RWFE (an acronym for 'real world fuel economy') that appears in the documents produced by Ford" (Ex. 4 at 1) and the "post-production testing, beyond EPA testing, as part of the development of the powertrain calibration update provided as part of Customer Satisfaction Program 13B07"). (Ex. 3 at 2).



Case 7:13-md-02450-KMK   Document 127   Filed 11/29/16   Page 3 of 4
Case 7:13-md-02450-KMK   Document 125   Filed 11/17/16   Page 3 of 4

November 17, 2016
Page 3

Because Ford acknowledges that the EPA estimates were the basis for the fuel economy numbers in its marketing, (Ex. 3 at 2), Plaintiffs are entitled to explore how Ford generated those numbers. Plaintiffs are challenging Ford's representations regarding the real world achievability of the EPA numbers; the manner in which the vehicles were tested bears on whether Ford's marketing (which claimed the EPA estimates translate to real world) was deceptive. *See, e.g., Jewels v. Casner*, 2015 WL 7306454, at *2 (E.D.N.Y. Nov. 19, 2015) (Rule 30(b)(6) topics are governed by the same relevancy standard as other discovery, "which permits discovery 'regarding any non-privileged matter that is relevant to any party's claim or defense'").

In addition, what Ford discovered in carrying out those tests bears on whether Ford knew its marketing was deceptive. Ford's knowledge is an element of Plaintiffs' fraud claim. *Compare* ECF No. 84 at 64 (operative complaint alleges common law fraud); *with Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 309 (S.D.N.Y. 2014) (an element of fraud in New York is defendant's knowledge of falsity); *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (same for California). The requested discovery is relevant and should be allowed.

**Ford's Non-EPA Testing and Methodologies Are Also Relevant**: Ford also objects to tendering a witness on its non-EPA testing and methodologies for estimating fuel economy (beyond post-production testing directly related to its customer satisfaction programs)—again, on relevance grounds. (Ex. 2 at 7.) This objection should be rejected for the same reasons just discussed. If Ford knew from these other tests or forecasting methodologies that drivers would *not* be able to achieve the EPA-estimated fuel economy in real world driving, that information is relevant to Plaintiffs' fraud claims and is thus discoverable. *Jewels v. Casner*, 2015 WL 7306454, at *2 (E.D.N.Y. Nov. 19, 2015); *Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 309 (S.D.N.Y. 2014); *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

**It Is Not Unduly Burdensome to Prepare a Witness to Discuss Likely Custodians**: Finally, Ford gives no good reason for refusing to testify about which personnel have knowledge of the above testing and methodologies. Ford objected on burden and breadth grounds since "numerous individuals" have responsive knowledge and their knowledge has "little, if any, relevance to the parties' claims and defenses." (Ex. 2 at 7-8.) But it is axiomatic that discovery into likely custodians is permissible. Fed. R. Civ. P. 26(b)(1) (Committee Notes – 2015) (discovery into "the identity and location of persons who know of any discoverable matter … is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples"). And Plaintiffs do not seek unreasonable detail concerning personnel; they ask only for a witness who can testify generally about which departments, groups, and third parties were involved, and which high-level personnel within Ford were kept apprised.



One Tampa City Center  |  201 North Franklin Street  |  7th Floor  |  Tampa, FL 33602  |  Ph: 813.223.5505  |  www.ForThePeople.com

November 17, 2016
Page 4

Plaintiffs request a pre-motion discovery conference to assist in resolution of this dispute.

Very truly yours,

John A. Yanchunis
jyanchunis@forthepeople.com

Enclosure

JY/LAC

Defendant is to respond to this Letter by 12/5/16.

So Ordered,

11/28/16

