UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re:* | Case No. 13-MD-2450 (KMK) |
| *Ford Fusion and C-MAX Fuel Economy Litigation* | DEFENDANT FORD MOTOR COMPANY'S ANSWER TO CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT |
| *This Document Relates to All Actions.* | **(JURY DEMAND ENDORSED HERE IN)** |

### DEFENDANT FORD MOTOR COMPANY'S ANSWER TO CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT AND AFFIRMATIVE DEFENSES

For its Answer to Consolidated Second Amended Class Action Complaint, Defendant Ford Motor Company ("Ford") states as follows:

## INTRODUCTION

1.      Ford admits that Plaintiffs bring this action making the allegations described in this paragraph, but denies that any of the allegations in this paragraph have merit.  Ford further states that no class has been certified, and denies that certification of any class is appropriate. Ford incorporates the preceding sentence by reference into its response to all paragraphs that include the allegations regarding "class action" or "class members."  Ford also specifically denies that its advertising for the 2013 model-year hybrid vehicles was "false" or "misleading."

2.      Ford admits only that the EPA Fuel Economy Rating for the 2010 Ford Fusion is 41 MPG city, 36 MPG highway, 39 MPG combined and that the EPA-estimated fuel economy rating for the 2010 Prius is 51 MPG city, 48 MPG highway, 50 MPG combined.  Ford denies the remaining allegations in this paragraph.

3.      Ford admits that in 2012 it launched an advertising campaign, which included television, digital and print advertisements, to promote the 2013 Fusion Hybrid and 2013 C-MAX Hybrid and the EPA-estimated fuel economy ratings for those vehicles.  Ford also admits that, in 2012, the EPA-estimated fuel economy ratings for the 2013 Fusion Hybrid and C-MAX Hybrid was 47 MPG city, 47 MPG highway, 47 MPG combined.  Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the allegations.

4.      Ford admits that its advertising campaign for the 2013 Fusion Hybrid and 2013 C-MAX Hybrid promoted the EPA-estimated fuel economy ratings for those vehicles.  Ford also admits that, in 2012, the EPA-estimated fuel economy ratings for the 2013 Fusion Hybrid and C-MAX Hybrid were 47 MPG city, 47 MPG highway and 47 MPG combined.  Ford further admits that it promoted the horsepower, size and cargo space of the 2013 C-MAX Hybrid.  Ford also admits that its share of the electrified vehicle market increased between the middle of 2012 and the middle of 2013.   Ford further admits that it was number two in the electrified vehicle market behind Toyota as of April 2013.  Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and therefore denies those allegations.

5.      Ford denies the allegations of this paragraph.

6.      Ford admits only that it based the original 2013 Ford C-MAX Hybrid label on testing of the related 2013 Ford Fusion Hybrid, which has the same engine, transmission and test weight, as allowed under EPA regulations.   Ford denies the remaining allegations in this paragraph.

7.      Ford admits that Plaintiffs purport to be purchasers or lessors of a 2013 Ford Fusion Hybrid or 2013 Ford C-MAX Hybrid vehicle, but denies the remaining allegations of this paragraph.

8.      Ford denies the allegations of this paragraph.

9.      Pursuant to the Court's Order entered July 24, 2017, ECF No. 142 ("July 24, 2017 Order") , the only Plaintiffs whose claims survived Ford's Motion to Dismiss the Second Amended Class Action Complaint are:  Richard Pitkin, Dennis Harkins, Gregory Holman, and Leah Broome.  Per Plaintiffs' counsel, Leah Broome has withdrawn, and they are not pursuing her claims in this lawsuit.  Therefore, apart from Plaintiffs Richard Pitkin, Dennis Harkins, and Gregory Holman, no answer is required.  Ford incorporates the preceding sentences by reference into its response to all paragraphs that include allegations regarding Plaintiffs other than Richard Pitkin, Dennis Harkins, and Gregory Holman.  Ford admits only that Plaintiffs Richard Pitkin, Dennis Harkins, and Gregory Holman bring this action for compensatory damages and equitable, injunctive, and declaratory relief against Ford.  Ford denies that Plaintiffs' claims have merit.

## JURISDICTION AND VENUE

10.      Ford admits that Plaintiffs seeks relief that exceeds the sum or value of $5,000,000 but denies that Plaintiffs or the purported class are entitled to such relief.  Ford admits the remaining allegations of this paragraph.

11.      Ford admits that it conducts business in the State of New York, but denies the remaining allegations of this paragraph.

12.      Ford admits that it distributes vehicles to independent Ford dealerships located in this District, but denies the remaining allegations of this paragraph.

## PARTIES

I.    **PLAINTIFFS**

    A.    **Arizona**

13.    Ford admits only that on December 6, 2012, Plaintiff Holman purchased a 2013 C-MAX Hybrid vehicle from AutoNation Ford, an independent dealership located in Arizona. Ford denies that its advertisements were deceptive and denies that Mr. Holman would not have purchased the C-MAX but for his alleged reliance on Ford's allegedly deceptive advertisements. Ford is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph and therefore denies the allegations.

    B.    **California**

14.    All claims brought by Plaintiff Klafter have been dismissed, therefore no response is required.

15.    Ford admits only that on or about October 30, 2012, Plaintiff Pitkin purchased a 2013 C-MAX Hybrid vehicle from Folsom Lake Ford, an independent dealership located in California. Ford denies that its advertisements were deceptive and denies that Mr. Pitkin would not have purchased the C-MAX but for his alleged reliance on Ford's allegedly deceptive advertisements. Ford is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph and therefore denies the allegations.

16.    All claims brought by Plaintiff Fontenot have been dismissed, therefore no response is required.

    C.    **Colorado**

17.    All claims brought by Plaintiff Wilkins have been dismissed, therefore no response is required.

**D.**  **Connecticut**

18.     All claims brought by Plaintiff Tibbetts have been dismissed, therefore no response is required.

**E.**  **Florida**

19.     All claims brought by Plaintiff Dobbs have been dismissed, therefore no response is required.

20.     All claims brought by Plaintiff Oldcorn have been dismissed, therefore no response is required.

**F.**  **Illinois**

21.     All claims brought by Plaintiff Cole have been dismissed, therefore no response is required.

22.     All claims brought by Plaintiff Weglarz have been dismissed, therefore no response is required.

**G.**  **Maryland**

23.     All claims brought by Plaintiff Belden have been dismissed, therefore no response is required.

**H.**  **Michigan**

24.     All claims brought by Plaintiff Griffiths have been dismissed, therefore no response is required.

25.     All claims brought by Plaintiff Romak have been dismissed, therefore no response is required.

### I.      Minnesota

26.      All claims brought by Plaintiff Majkrzak have been dismissed, therefore no response is required.

### J.      Missouri

27.      Per Plaintiffs' counsel, Plaintiff Broome has withdrawn and they are not pursuing her claims in this lawsuit, therefore no response is required.

28.      All claims brought by Plaintiff Hendrickson have been dismissed, therefore no response is required.

### K.      New York

29.      All claims brought by Plaintiff DeVito have been dismissed, therefore no response is required.

30.      All claims brought by Plaintiff Fellows have been dismissed, therefore no response is required.

31.      All claims brought by Plaintiff Hoyos have been dismissed, therefore no response is required.

### L .      O r e g o n

32.      All claims brought by Plaintiff Goodale have been dismissed, therefore no response is required.

### M.      P e n n s y l v a n i a

33.      All claims brought by Plaintiff Druckenmiller have been dismissed, therefore no response is required.

### N.      Wisconsin

34.      Ford admits only that on or about November 29, 2012, Plaintiff Harkins purchased a 2013 C-MAX Hybrid vehicle from Kayser Ford, an independent dealership located in Wisconsin.  Ford denies that its advertisements were deceptive and denies that Mr. Harkins would not have purchased the C-MAX but for his alleged reliance on Ford's allegedly deceptive advertisements.  Ford is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph and therefore denies the allegations.

## II.      FORD MOTOR COMPANY

35.      Ford admits that it is a publicly traded company, listed on the New York Stock Exchange.  Ford also admits that it is an American automobile manufacturer headquartered in Dearborn, Michigan, with operations worldwide.  Ford sells its vehicles to independent dealerships in the United States, including those located in New York.   Ford denies the allegations in this paragraph to the extent they imply that Ford directly sells or distributes vehicles to U.S. consumers.   Ford denies the remaining allegations in this paragraph.

## FACTUAL ALLEGATIONS

## I.      THE IMPORTANCE OF FUEL ECONOMY AND MARKET FOR FUEL-EFFICIENT "HYBRID" VEHICLES

36.      Ford admits only that fuel economy is a primary purchase consideration for consumers of certain vehicles.  Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore Ford denies the remaining allegations.

37.     Ford admits only that fuel economy is one of many factors that some buyers of hybrid and other small vehicles consider.  Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore Ford denies the remaining allegations.

38.     Ford admits only that fuel economy is one of many factors that some consumers consider when purchasing a vehicle and that some consumers are willing to pay more for a vehicle that has better fuel economy than a comparable vehicle.  Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore Ford denies the allegations.

39.     Ford admits only that a hybrid vehicle uses an internal combustion engine, such as a gasoline engine, and an electric motor to power the vehicle and that achieving better fuel economy is one of the purposes of having an electric motor and gasoline engine.  Ford denies the remaining allegations of this paragraph.

40.     Ford admits only that some consumers may consider lower fuel costs and environmental factors, among other factors, when purchasing a vehicle.  Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore Ford denies the allegations.


## II.     FORDS LACK OF SUCCESS IN THE HYBRID MARKET

41.     Ford admits that in 2009 Ford released the model year 2010 Ford Fusion Hybrid, which was Ford's first sedan hybrid.  Ford is without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in this paragraph, and therefore denies the allegations.

42.     Ford admits that in its marketing for the model year 2010 Ford Fusion Hybrid it advertised the EPA-estimated fuel economy ratings for that vehicle, which were 36 MPG city, 41 MPG highway, 39 MPG combined.  Ford further admits that the EPA-estimated fuel economy ratings for the 2010 Toyota Prius are 51MPG city and 49 MPG combined.  Ford denies that the EPA-estimated fuel economy ratings for the 2010 Ford Prius is 50 MPG highway and denies that the EPA-estimated fuel economy ratings for the 2010 Fusion Hybrid was well behind the fuel economy for competitor vehicles in the same class.

43.     Ford denies the allegations in this paragraph.

44.     Ford admits only that that the EPA-estimated fuel economy ratings for the 2011 and 2012 Fusion Hybrid vehicles were similar to the ratings for the 2010 Fusion Hybrid.  Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore denies the allegations.

III.    **FORD REVERSES ITS FORTUNES WITH A MASSIVE "47/47/47 MPG" ADVERTISING CAMPAIGN**

45.     Ford admits that its initial advertising campaign for the 2013 Fusion Hybrid and 2013 C-MAX Hybrid vehicles in 2012 focused on the EPA-estimated fuel economy ratings for these vehicles, which, at the time was 47 MPG city, 47 MPG highway and 47 MPG combined. Ford further admits that, in 2012, the EPA-estimated fuel economy ratings for the 2013 Fusion Hybrid and 2013 C-MAX were better than the Prius v.  Ford further admits that the Prius v's EPA-estimated city fuel economy rating was better than the highway rating.  Ford denies the

remaining allegations in this paragraph and specifically denies that its advertisements were intended to convey guarantees of specific, real-world fuel economy performance.

46.     Ford admits only that sales of 2013 Fusion Hybrid and C-MAX hybrid vehicles contributed to an increase in Ford's share of the electrified vehicle market.   Ford denies the remaining allegations in this paragraph.

47.     Ford admits that it was number two in the electrified vehicle market behind Toyota as of May 2013.   Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

**A.     The Pervasive Scope of Ford's "47" Campaign**

48.     Ford denies the allegations in this paragraph.

49.     Ford denies the allegations in this paragraph.

50.     Ford admits only that its Random Act of Fusion marketing campaign included an event in Times Square hosted by Ryan Seacrest and an event referred to as 47 challenges, 47 days that included interactive content that gave consumers multiple chances to win a 2013 Ford Fusion.   Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

51.     Ford denies that its advertising campaign the 2013 Ford Fusion Hybrid and 2013 C-MAX Hybrid spared no expense.   Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore Ford denies the allegations.

52.     Ford admits that its advertisement campaign for the 2013 Ford Fusion Hybrid and 2013 C-MAX Hybrid included national television commercials, print advertisements, digital advertisements, press releases, showroom brochures and dealer advertisements.   Ford also admits

that its advertisement campaign promoted the EPA-estimated fuel economy ratings for the vehicles, which was 47 MPG city, 47 MPG highway and 47 MPG combined.   Ford specifically denies that its advertisements guaranteed specific, real-world fuel economy performance.   Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore Ford denies the allegations.

### B.    The "47" Campaign's Real-World Message

53.    Ford denies the allegations in this paragraph.

54.    Ford admits that its advertisements for the 2013 Ford Fusion Hybrid and C-MAX promoted the vehicles' technology, value and "real car" performance.   Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore Ford denies the allegations.

55.    Ford admits that fuel economy is important to some of its customers.   Ford denies the remaining allegations in this paragraph.

56.    Ford admits that its advertisements for the 2013 Ford Fusion Hybrid and 2013 C-MAX Hybrid include the following disclosure relating to the fuel economy statements contained in the advertisements: "EPA-estimated 47 city/47 hwy/47 combined mpg. Actual mileage will vary." Ford denies the remaining allegations in this paragraph.

57.    Ford admits that the bulleted statements set forth in paragraph 57, without the underline, were made in Ford's advertisements for the 2013 Ford Fusion Hybrid or C-MAX Hybrid and that such statements were based on the EPA-estimated fuel economy ratings for the

vehicles.    Ford specifically denies that its advertisements were guaranteed specific, real-world fuel economy performance and denies the remaining allegations in this paragraph.

58.    Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore Ford denies the allegations.

59.    Ford admits that when the 2013 C-MAX Hybrid was launched it had an EPA-estimated range of 571 miles.  To the extent an answer is required, Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore Ford denies the allegations.

60.    Ford admits that when the 2013 C-MAX Hybrid was launched it had an EPA-estimated range of 571 miles, which was 121 miles more than the EPA-estimated range for the Prius v.   Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore Ford denies the allegations.

61.    Ford admits that, in 2012, the EPA-estimated fuel economy ratings for the 2013 Fusion Hybrid and C-MAX Hybrid was 47 MPG city, 47 MPG highway and 47 MPG combined and that the vehicle had an EPA-estimated range of 571 miles.   Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore Ford denies the allegations.

62.    Ford denies the allegations in this paragraph.

**C.    Comparisons to Other Hybrid Vehicles**

63.    Ford admits that in some advertisements for the 2013 C-MAX Hybrid, it compared the EPA-estimated fuel economy rating for the C-MAX with the EPA-estimated fuel

economy rating for other hybrid vehicles that consumers might consider when purchasing a C-MAX Hybrid.  Ford denies the remaining allegations in this paragraph.

64.    Ford admits that, in 2012, the EPA-estimated fuel economy ratings for the 2013 Fusion Hybrid was 47 MPG city and 47 MPG highway and the EPA-estimated fuel economy ratings for the 2013 Camry Hybrid LE was 43 MPG city and 39 MPG highway.  Ford also admits that when the 2013 Fusion Hybrid was launched in 2012 it was the most fuel efficient mid-size sedan based on the EPA-estimated fuel economy ratings.

65.    Ford denies that the television commercial referenced in this paragraph is titled Wrong Direction, but admits the remaining allegations in this paragraph.

66.    Ford denies that the television commercial referenced in this paragraph is titled New Idea, but admits the remaining allegations in this paragraph.

67.    Ford admits that it made statements in its advertisements for the 2013 CMAX Hybrid that the C-MAX "beats Prius v with better mpg" and that such statements were based on the EPA-estimated fuel economy ratings for the vehicles.    Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

68.    Ford admits the allegations in this paragraph to the extent the reference to "mileage" in the paragraph refers to the EPA-estimated fuel economy ratings.  Ford specifically denies that its advertisements were guaranteed specific, real-world fuel economy performance.

69.    Ford admits the allegations in this paragraph and states that the advertisement identified in this paragraph referred to the EPA-estimated fuel economy ratings for the vehicles.  Ford specifically denies that its advertisements were guaranteed specific, real-world fuel economy performance.

70.     Ford admits that when the 2013 C-MAX Hybrid was launched in 2012 it had an EPA-estimated range of 571 miles, which was 121 miles more than the EPA-estimated range for the Prius v.   Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore Ford denies the allegations.

71.     Ford admits that when the 2013 C-MAX Hybrid was launched in 2012 it had an EPA-estimated range of 571 miles, which was 121 miles more than the EPA-estimated range for the Prius v.   Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore Ford denies the allegations.

72.     Ford admits that in 2012 the EPA-estimated combined fuel economy rating for the 2013 C-MAX Hybrid was 47 MPG, which was better than the EPA-estimated combined fuel economy rating for the Prius v.   Ford denies that the EPA-estimated combined fuel economy rating for the Prius v is 44 MPG because it is 43 MPG.   Ford also admits that when the 2013 C-MAX Hybrid was launched in 2012 it had an EPA-estimated range of 571 miles, which was 121 miles more than the EPA-estimated range for the Prius v.    Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

73.     Ford admits that when the 2013 C-MAX Hybrid was launched in 2012 it had an EPA-estimated range of 571 miles, which was 121 miles more than the EPA-estimated range for the Prius v.   Ford further admits that it released a video on the internet called the Hybrid Games Challenge: MPG Showdown that promoted the EPA-estimated fuel economy rating and range for the C-MAX Hybrid as compared to the Prius v.   Ford further admits that the Hybrid Games video was a sports parody where two actors played the roles of sport commentators. Ford denies that the actors were "trying to determine" whether the C-MAX or Prius v had better MPG and

denies that the video "confirm[ed] ostensibly the better MPG of the C-MAX."   Ford admits the remaining allegations in this paragraph.

74.     Ford admits the allegations in this paragraph and that the statements regarding fuel economy in the advertisement were all based on the EPA-estimated fuel economy ratings of the C-MAX and the Toyota Prius v.

75.     Ford admits the allegations in this paragraph and that the statements regarding fuel economy in the advertisement were all based on the EPA-estimated fuel economy ratings of the C-MAX and the Toyota Prius v.

76.     Ford admits the allegations in this paragraph and that the statements regarding fuel economy in the advertisement were all based on the EPA-estimated fuel economy ratings of the C-MAX and the Toyota Prius v.

77.     Ford admits that it stated in press releases issued in 2012 that the C-MAX "delivers EPA-certified 47 mpg city, 47 mpg highway ratings – 7 mpg better than the Prius v " and that "customers would pay less at the dealership and less at the pump."   Ford denies the remaining allegations in this paragraph.

78.     Ford admits the allegations in this paragraph and that the statements regarding fuel economy in the press release were all based on the EPA-estimated fuel economy ratings of the 2013 C-MAX Hybrid and the 2013 Toyota Prius v as of 2012.

79.     Ford denies the allegations in this paragraph.

80.     Ford denies the allegations in this paragraph.

**D.     The 2013 Fusion Hybrid and C-MAX Deliver Nowhere Near 47 MPG**

81.     Ford admits that in 2012 it launched an advertising campaign to promote the 2013 Fusion Hybrid and 2013 C-MAX Hybrid and the EPA-estimated fuel economy ratings for those vehicles.  Ford also admits that, in 2012, the EPA-estimated fuel economy ratings for the 2013 Fusion Hybrid and C-MAX Hybrid was 47 MPG city, 47 MPG highway, 47 MPG combined. Ford denies the remaining allegations in this paragraph.

82.     Ford denies the allegations in this paragraph.

83.     Ford admits that a small number of owners of 2013 Ford Fusion Hybrid and C-MAX Hybrid vehicles have reported concerns regarding the gas mileage of their vehicles, but Ford denies that all of these reported complaints have a common cause or are accurate.   Ford also denies that consumers could not "attain fuel economy that beats Toyota's Prius v."  Ford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the allegations.

84.     Ford admits that in October 2012, Larry Vellequette of Automotive News reported that after logging more than 1,000 miles with the C-MAX, he averaged only slightly above 37 MPG.  Ford denies the remaining allegations in this paragraph and specifically denies that automotive professionals have failed to come anywhere near 47 MPG in the 2013 C-MAX Hybrid vehicle.

85.     Ford admits that Consumer Reports issued an article in December 2012 relating to independent testing it allegedly performed relating to various hybrid vehicles, including the 2013 Fusion Hybrid and 2013 C-MAX Hybrid and that Consumer Reports reported that the Fusion Hybrid delivered 39 MPG overall and the C-MAX Hybrid delivered 37 overall under their tests. Ford further admits that Consumer Reports stated that that the overall MPG for the C-MAX and

Fusion Hybrid  is "off  by a whopping 10 and 8 MPG, respectively, or about 20 percent."  Ford denies the remaining allegations in this paragraph.

86.    Ford admits only that Consumer Reports stated in its December 2012 article that the 2013 Fusion Hybrid and 2013 C-MAX Hybrid had the largest discrepancy of the current vehicle models they tested in relation to the EPA's combined MPG estimate.  Ford denies the remaining allegations in this paragraph.

87.    Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies the allegations.

88.    Ford denies the allegations in this paragraph.

89.    Ford denies the allegations in this paragraph.

90.    Ford admits only that it in August 2013 it generated a revised fuel economy label for 2013 C-MAX vehicles and that in July 2014 it generated revised fuel economy labels for certain Ford vehicles, including the 2013 C-MAX Hybrid and 2013 Fusion Hybrid.  Ford denies the remaining allegations in this paragraph.

### E.    Ford Acknowledges that the Vehicles Do Not Achieve the Advertised Fuel Economy

91.    Ford admits only that it implemented a customer satisfaction program for certain 2013 Fusion Hybrid and C-MAX vehicles that made an improved  Hybrid Powertrain Control Module calibration available that reduces the amount of gasoline running time under certain driving conditions, thus reducing fuel consumption.  Ford denies the remaining allegations in this paragraph.

92.     Ford admits that it in August 2013 it lowered the fuel economy rating for the 2013 C-MAX hybrid to 45 city, 40 highway, and 43 combined miles per gallon.  Ford denies the remaining allegations in this paragraph.

93.     Ford admits only that it based the original 2013 Ford C-MAX label on testing of the related Ford Fusion Hybrid, which has the same engine, transmission and test weight, as allowed under EPA regulations.  Ford denies the remaining allegations in this paragraph.

94.     Ford denies the allegations in this paragraph.

95.     Ford admits only that its advertisements for the 2013 C-MAX Hybrid were not misleading or deceptive.  Ford denies the remaining allegations in this paragraph.

96.     Ford admits that it implemented two customer satisfaction programs, which provided goodwill payments to eligible owners of 2013 Ford C-MAX hybrid vehicles for the estimated average fuel cost of the difference between the original fuel economy label and the revised labels for the vehicles.   One of those customer satisfaction programs included 2013 Fusion Hybrid vehicles.   Thus, Ford denies that it did not offer goodwill payments to 2013 Fusion Hybrid owners and lessees.  Ford denies the remaining allegations in this paragraph.

97.     Ford denies the allegations in this paragraph.

## CLASS ACTION ALLEGATIONS

98.     Ford admits that Plaintiffs purport to bring this action on behalf of the proposed class, but denies that certification of any class is appropriate and denies that Plaintiffs have the unfettered right to amend their complaint to allege a different class or subclass.  Ford denies the remaining allegations in paragraph this paragraph.

99.     Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

100.    Ford denies the allegations in this paragraph.

101.    Ford denies the allegations in this paragraph.

102.    Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies the allegations.

103.    Ford denies the allegations in this paragraph.

104.    Ford denies the allegations in this paragraph.

105.    Ford denies the allegations in this paragraph.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Violation of California Business & Professions Code §17200, *et seq.*,
Unfair Competition Law)
on Behalf of All Plaintiffs or, Alternatively, the California Plaintiffs**

106.    Ford incorporates herein its responses to paragraphs 1–105.

107.    The allegations in this paragraph assert a legal conclusion to which no answer is required.  To the extent a response is required, Ford denies that this paragraph completely and accurately reflects the content of the statute.

108.    Ford denies the allegations in this paragraph.

109.    Ford denies the allegations in this paragraph.

110.    Ford denies the allegations in this paragraph.

111.    Ford denies the allegations in this paragraph.

112.    Ford denies the allegations in this paragraph.

**SECOND CAUSE OF ACTION**
**(Violation of California Business & Professions Code §17500, *et seq.*,**
**False Advertising Laws)**
**on Behalf of All Plaintiffs or, Alternatively, the California Plaintiffs**

113.    Ford incorporates herein its responses to paragraphs 1–112.

114.    Ford denies the allegations in this paragraph.

115.    Ford denies the allegations in this paragraph.

116.    Ford denies the allegations in this paragraph.

117.    Ford denies the allegations in this paragraph.

**THIRD CAUSE OF ACTION**
**(Violation of California Civil Code §1750 *et seq.*,**
**Consumer Legal Remedies Act)**
**on Behalf of All Plaintiffs or, Alternatively, the California Plaintiffs**

118.    Ford incorporates herein its responses to paragraphs 1–117.

119.    The allegations in this paragraph assert a legal conclusion to which no answer is required.   To the extent an answer is required Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

120.    Ford denies the allegations in this paragraph.

121.    Ford denies the allegations in this paragraph.

122.    Ford admits that Plaintiffs seek the relief alleged in this paragraph, but deny that Plaintiffs are entitled to any relief whatsoever.

123.    Ford admits only that Plaintiff Pitkin sent Ford a Notice of Intent to Bring and Action For Damages under the Consumer Legal Remedies Act on or around December 10, 2012 and that Ford received such notice.   Ford denies that any of its actions in relation to the advertisements for the 2013 C-MAX Hybrid were unlawful or deceptive.   Ford denies the remaining allegations of this paragraph.

124.    The remaining allegations in this paragraph assert a legal conclusion to which no answer is required.   To the extent an answer is required Ford denies the allegations.

125.    Ford denies the allegations in this paragraph.

126.    Ford admits that Plaintiffs seek the relief alleged in this paragraph, but deny that Plaintiffs are entitled to any relief whatsoever.   Ford denies the remaining allegations in this paragraph.

**FOURTH CAUSE OF ACTION**
**(Violations of Arizona Consumer Fraud Act)**
**on Behalf of the Arizona Plaintiff**

127.    Ford incorporates herein its responses to paragraphs 1–126.

128.    Ford admits that Plaintiffs purport to bring a claim in this action pursuant to the ACFA as alleged in this paragraph, but deny that Plaintiffs are entitled to any relief whatsoever under that statute.

129.    The allegations in this paragraph assert a legal conclusion to which no answer is required.   To the extent an answer is required Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

130.    Ford denies the allegations in this paragraph.

131.    Ford denies the allegations in this paragraph.

132.    The allegations in this paragraph assert a legal conclusion to which no answer is required.   To the extent an answer is required Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

133.    Ford denies the allegations in this paragraph.

134.    Ford admits only that Plaintiff Holman purchased a 2013 C-MAX vehicle from AutoNation Ford, an independent dealership located in Arizona.  Ford is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph and therefore denies the allegations.

135.    Ford denies the allegations in this paragraph.

136.    Ford denies the allegations in this paragraph.

137.    Ford denies the allegations in this paragraph.

138.    Ford denies the allegations in this paragraph.

139.    Ford denies the allegations in this paragraph.

140.    Ford denies the allegations in this paragraph.

141.    Ford denies the allegations in this paragraph.

142.    Ford denies the allegations in this paragraph.

**FIFTH CAUSE OF ACTION**
**(Violations of Colorado Revised Statutes §6-1-101, *et seq.*,**
**the Colorado Consumer Protection Act)**
**on Behalf of the Colorado Plaintiff**

143.    Ford incorporates herein its responses to paragraphs 1–142.  Ford responds further to state that there is no "Colorado Plaintiff" following the Court's July 24, 2017 Order, therefore all of Plaintiffs' claims under Colorado law were effectively dismissed, and no response is required.    Ford incorporates the preceding sentence into its response to all of Plaintiffs' allegations concerning claims premised on Colorado law.

144.    Plaintiffs' claims under Colorado law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

145.    Plaintiffs' claims under Colorado law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

146.    Plaintiffs' claims under Colorado law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

147.    Plaintiffs' claims under Colorado law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

148.    Plaintiffs' claims under Colorado law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

149.    Plaintiffs' claims under Colorado law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

**SIXTH CAUSE OF ACTION**
**(Violations of Connecticut General Statutes §§42-110a, *et seq.*,**
**the Connecticut Unfair Trade Practices Act)**
**on Behalf of the Connecticut Plaintiff**

150.    Ford incorporates herein its responses to paragraphs 1–149. Ford responds further to state that there is no "Connecticut Plaintiff" following the Court's July 24, 2017 Order,

therefore all of Plaintiffs' claims under Connecticut law were effectively dismissed, and no response is required.   Ford incorporates the preceding sentence into its response to all of Plaintiffs' allegations concerning claims premised on Connecticut law.

151.    Plaintiffs' claims under Connecticut law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

152.    Plaintiffs' claims under Connecticut law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

153.    Plaintiffs' claims under Connecticut law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

154.    Plaintiffs' claims under Connecticut law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

155.    Plaintiffs' claims under Connecticut law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

156.    Plaintiffs' claims under Connecticut law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

157.    Plaintiffs' claims under Connecticut law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

**SEVENTH CAUSE OF ACTION**
**(Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. §501.201, *et seq.*)**
**on Behalf of the Florida Plaintiffs**

158.    Ford incorporates herein its responses to paragraphs 1–157. Ford responds further to state that there is no "Florida Plaintiffs" following the Court's July 24, 2017 Order, therefore

all of Plaintiffs' claims under Florida law were effectively dismissed, and no response is required. Ford incorporates the preceding sentence into its response to all of Plaintiffs' allegations concerning claims premised on Florida law.

159.   Plaintiffs' claims under Florida law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

160.   Plaintiffs' claims under Florida law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

161.   Plaintiffs' claims under Florida law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

162.   Plaintiffs' claims under Florida law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

163.   Plaintiffs' claims under Florida law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

164.   Plaintiffs' claims under Florida law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

165.   Plaintiffs' claims under Florida law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

166.   Plaintiffs' claims under Florida law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

167.   Plaintiffs' claims under Florida law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

**EIGHTH CAUSE OF ACTION**
**(Violation of Illinois Consumer Fraud and Deceptive Business Practices Act,**
**§815 Illinois Compiled Statutes Annotated 505/1, *et seq.*)**
**on Behalf of the Illinois Plaintiffs**

168.   Ford incorporates herein its responses to paragraphs 1–167. Ford responds further to state that there is no "Illinois Plaintiffs" following the Court's July 24, 2017 Order, therefore all of Plaintiffs' claims under Illinois law were effectively dismissed, and no response is required.   Ford incorporates the preceding sentence into its response to all of Plaintiffs' allegations concerning claims premised on Illinois law.

169.   Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

170.   Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

171.   Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

172.   Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

173.   Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

174.   Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

175.   Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

176.    Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

177.    Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

178.    Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

179.    Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

180.    Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

181.    Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

### NINTH CAUSE OF ACTION
### (Violation of the Illinois Uniform Deceptive Trade Practices Act, §815 ILCS 510/1, *et seq.*) on Behalf of the Illinois Plaintiffs

182.    Ford incorporates by reference herein its responses to paragraphs 1–181. Responding further, Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order.

183.    Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

184.    Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

185.     Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

186.     Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

187.     Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

188.     Plaintiffs' claims under Illinois law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

**TENTH CAUSE OF ACTION**
**(Violation of the Maryland Consumer Protection Act**
**Md. Code Com. Law §13-101, *et seq.*)**
**on Behalf of the Maryland Plaintiff**

189.     Ford incorporates its responses herein to paragraphs 1–188.  Ford responds further to state that there is no "Maryland Plaintiff" following the Court's July 24, 2017 Order, therefore all of Plaintiffs' claims under Maryland law were effectively dismissed, and no response is required.   Ford incorporates the preceding sentence into its response to all of Plaintiffs' allegations concerning claims premised on Maryland law.

190.     Plaintiffs' claims under Maryland law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

191.     Plaintiffs' claims under Maryland law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

192.     Plaintiffs' claims under Maryland law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

193.    Plaintiffs' claims under Maryland law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

194.    Plaintiffs' claims under Maryland law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

195.    Plaintiffs' claims under Maryland law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

**ELEVENTH CAUSE OF ACTION**
**(Violation of the Michigan Consumer Protection Act,**
**Mich. Comp. Laws §445.901, *et seq.*)**
**on Behalf of the Michigan Plaintiffs**

196.    Ford incorporates its responses herein to paragraphs 1–195.  Ford responds further to state that there are no "Michigan Plaintiffs" following the Court's July 24, 2017 Order, therefore all of Plaintiffs' claims under Michigan law were effectively dismissed, and no response is required.  Ford incorporates the preceding sentence into its response to all of Plaintiffs' allegations concerning claims premised on Michigan law.

197.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

198.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

199.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

200.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

201.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

202.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

203.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

204.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

205.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

206.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

207.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

208.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

209.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

210.    Plaintiffs' claims under Michigan law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

**TWELFTH CAUSE OF ACTION**
**(Violation of Minnesota Consumer Fraud Act,**

**Minnesota Statutes §§325f.68-325f.69)**
**on Behalf of the Minnesota Plaintiff**

211.    Ford incorporates its responses herein to paragraphs 1–210.  Ford responds further to state that there is no "Minnesota Plaintiff" following the Court's July 24, 2017 Order, therefore all of Plaintiffs' claims under Minnesota law were effectively dismissed, and no response is required.  Ford incorporates the preceding sentence into its response to all of Plaintiffs' allegations concerning claims premised on Minnesota law.

212.    Plaintiffs' claims under Minnesota law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

213.    Plaintiffs' claims under Minnesota law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

214.    Plaintiffs' claims under Minnesota law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

215.    Plaintiffs' claims under Minnesota law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

216.    Plaintiffs' claims under Minnesota law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

217.    Plaintiffs' claims under Minnesota law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

218.    Plaintiffs' claims under Minnesota law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

219.    Plaintiffs' claims under Minnesota law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

220.    Plaintiffs' claims under Minnesota law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

221.    Plaintiffs' claims under Minnesota law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

222.    Plaintiffs' claims under Minnesota law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

223.    Plaintiffs' claims under Minnesota law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

**THIRTEENTH CAUSE OF ACTION**
**(Violation of the Missouri Merchandising Practices Act,**
**Missouri Revised Statutes §407.010, *et seq.*)**
**on Behalf of the Missouri Plaintiffs**

224.    Ford incorporates its responses herein to paragraphs 1–223.  Ford responds further to state that there are no "Missouri Plaintiffs" following the Court's July 24, 2017 Order, therefore all of Plaintiffs' claims under Missouri law were effectively dismissed, and no response is required.  Ford incorporates the preceding sentence into its response to all of Plaintiffs' allegations concerning claims premised on Missouri law.

225.    Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

226.    Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

227.     Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

228.     Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

229.     Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

230.     Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

231.     Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

232.     Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

233.     Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

234.     Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

235.     Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

236.     Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

237.   Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

238.   Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

239.   Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

240.   Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

241.   Plaintiffs' claims under Missouri law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

### FOURTEENTH CAUSE OF ACTION
**(Deceptive Acts and Practices in Violation of N.Y. Gen. Bus. Law §349)**
**on Behalf of the New York Plaintiffs**

242.   Ford incorporates its responses herein to paragraphs 1–241.  Ford responds further to state that there are no "New York Plaintiffs" following the Court's July 24, 2017 Order, therefore all of Plaintiffs' claims under New York law were effectively dismissed, and no response is required.  Ford incorporates the preceding sentence into its response to all of Plaintiffs' allegations concerning claims premised on New York law.

243.   Plaintiffs' claims under New York law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

244.   Plaintiffs' claims under New York law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

245.    Plaintiffs' claims under New York law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

246.    Plaintiffs' claims under New York law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

247.    Plaintiffs' claims under New York law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

### FIFTEENTH CAUSE OF ACTION
**(False Advertising in Violation of N.Y. Gen. Bus. Law §350, *et seq.*)**
**on Behalf of the New York Plaintiffs**

248.    Ford incorporates its responses herein to paragraphs 1–247.  Responding further, Plaintiffs' claims under New York law were effectively dismissed by the Court's July 24, 2017 Order.

249.    Plaintiffs' claims under New York law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

250.    Plaintiffs' claims under New York law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

251.    Plaintiffs' claims under New York law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

### SIXTEENTH CAUSE OF ACTION
**(Oregon Unlawful Trade Practices Act)**
**on Behalf of the Oregon Plaintiff**

252.    Ford incorporates its responses herein to paragraphs 1–251.  Ford responds further to state that there is no "Oregon Plaintiff" following the Court's July 24, 2017 Order, therefore all of Plaintiffs' claims under Oregon law were effectively dismissed, and no response is required.    Ford incorporates the preceding sentence into its response to all of Plaintiffs' allegations concerning claims premised on Oregon law.

253.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

254.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

255.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

256.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

257.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

258.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

259.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

260.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

261.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

262.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

263.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

264.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

265.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

266.    Plaintiffs' claims under Oregon law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.


**SEVENTEENTH CAUSE OF ACTION**
**(Pennsylvania Unfair Trade Practices and Consumer**
**Protection Law, 73 P.S. §201-1, *et seq.*)**
**on Behalf of the Pennsylvania Plaintiff**

267.    Ford incorporates its responses herein to paragraphs 1–266.  Ford responds further to state that there is no "Pennsylvania Plaintiff" following the Court's July 24, 2017 Order, therefore all of Plaintiffs' claims under Pennsylvania law were effectively dismissed, and no response is required.  Ford incorporates the preceding sentence into its response to all of Plaintiffs' allegations concerning claims premised on Pennsylvania law.

268.    Plaintiffs' claims under Pennsylvania law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

269.    Plaintiffs' claims under Pennsylvania law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

270.    Plaintiffs' claims under Pennsylvania law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

271.    Plaintiffs' claims under Pennsylvania law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

272.    Plaintiffs' claims under Pennsylvania law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

273.    Plaintiffs' claims under Pennsylvania law were effectively dismissed by the Court's July 24, 2017 Order, so no response is required.

**EIGHTEENTH CAUSE OF ACTION**
**(Violation of the Wisconsin Deceptive Trade Practices Act,**
**Wisc. Stat. §110.18)**
**on Behalf of the Wisconsin Plaintiff**

274.    Ford incorporates its responses herein to paragraphs 1–273.

275.    Ford denies the allegations in this paragraph.

276.    Ford denies the allegations in this paragraph.

277.    Ford denies the allegations in this paragraph.

278.    Ford denies the allegations in this paragraph.

279.    Ford denies the allegations in this paragraph.

280.    Ford denies the allegations in this paragraph.

## NINETEENTH CAUSE OF ACTION
### (Fraud)
### on Behalf of All Plaintiffs

281.    Ford incorporates its responses herein to paragraphs 1–280.  Responding further, to the extent Plaintiffs' assert fraud claims under the common law of states other than California, Wisconsin, or Arizona, no response is required because the Court's July 24, 2017 Order disposed of Plaintiffs from other states.  Ford incorporates the preceding sentence into its responses to all of Plaintiffs' allegations concerning common law fraud claims brought "on Behalf of All Plaintiffs."

282.    Ford denies the allegations in this paragraph.

283.    Ford denies the allegations in this paragraph.

284.    Ford denies the allegations in this paragraph.

285.    Ford denies the allegations in this paragraph.

286.    Ford denies the allegations in this paragraph.

## TWENTIETH CAUSE OF ACTION
### (Negligent Misrepresentation)
### on Behalf of All Plaintiffs

287.    Ford incorporates its responses herein to paragraphs 1–286.  Responding further, as acknowledged by the Court in its July 24, 2017 Order, Plaintiffs voluntarily dismissed their negligent misrepresentation claim, therefore no response is required to paragraphs 287–292.

288.    Plaintiffs voluntarily dismissed their negligent misrepresentation claim, therefore no response is required.

289.    Plaintiffs voluntarily dismissed their negligent misrepresentation claim, therefore no response is required.

290.    Plaintiffs voluntarily dismissed their negligent misrepresentation claim, therefore no response is required.

291.    Plaintiffs voluntarily dismissed their negligent misrepresentation claim, therefore no response is required.

292.    Plaintiffs voluntarily dismissed their negligent misrepresentation claim, therefore no response is required.


## TWENTY-FIRST CAUSE OF ACTION
### (Breach of Contract)
### on Behalf of All Plaintiffs

293.    Ford incorporates its responses herein to paragraphs 1–292.  Responding further, as acknowledged by the Court in its July 24, 2017 Order, Plaintiffs voluntarily dismissed their breach of contract claim, therefore no response is required to paragraphs 293–296.

294.    Plaintiffs voluntarily dismissed their breach of contract claim, therefore no response is required.

295.    Plaintiffs voluntarily dismissed their breach of contract claim, therefore no response is required.

296.    Plaintiffs voluntarily dismissed their breach of contract claim, therefore no response is required.

## TWENTY-SECOND CAUSE OF ACTION
### (Breach of Covenant of Good Faith and Fair Dealing)
### on Behalf of All Plaintiffs

297.    Ford incorporates its responses herein to paragraphs 1–296.  Responding further, as acknowledged by the Court in its July 24, 2017 Order, Plaintiffs voluntarily dismissed their breach of covenant of good faith and fair dealing claim, therefore no response is required to paragraphs 297–303.

298.    Plaintiffs voluntarily dismissed their breach of covenant of good faith and fair dealing claim, therefore no response is required.

299.    Plaintiffs voluntarily dismissed their breach of covenant of good faith and fair dealing claim, therefore no response is required.

300.    Plaintiffs voluntarily dismissed their breach of covenant of good faith and fair dealing claim, therefore no response is required.

301.    Plaintiffs voluntarily dismissed their breach of covenant of good faith and fair dealing claim, therefore no response is required.

302.    Plaintiffs voluntarily dismissed their breach of covenant of good faith and fair dealing claim, therefore no response is required.

303.    Plaintiffs voluntarily dismissed their breach of covenant of good faith and fair dealing claim, therefore no response is required.

## TWENTY-THIRD CAUSE OF ACTION
### (Breach of Express Warranty)
### on Behalf of All Plaintiffs

304.    Ford incorporates its responses herein to paragraphs 1–303.  Responding further, to the extent Plaintiffs' assert breach of express warranty claims under the laws of states other

than California, Wisconsin, or Arizona, no response is required because the Court's July 24, 2017 Order disposed of Plaintiffs from other states.  Ford incorporates the preceding sentence into its responses to all of Plaintiffs' allegations concerning breach of express warranty claims brought "on Behalf of All Plaintiffs."

305.    The allegations in this paragraph assert a legal conclusion to which no answer is required, and to the extent an answer is required Ford lacks knowledge or information to form a belief as to the truth of the allegation and therefore denies this allegation.

306.    Ford denies the allegations in this paragraph.

307.    Ford denies the allegations in this paragraph.

308.    Ford denies the allegations in this paragraph.

309.    Ford denies the allegations in this paragraph.

310.    Ford denies the allegations in this paragraph.

311.    Ford denies the allegations in this paragraph.

312.    The allegations in paragraph 312 state legal conclusions to which no response is required.  To the extent an answer is required Ford lacks knowledge or information to form a belief as to the truth of the allegation and therefore denies this allegation.

313.    Ford denies the allegations in this paragraph.

314.    The allegations in paragraph 312 state legal conclusions to which no response is required.  To the extent a response is required, Ford denies the allegations in this paragraph.

**TWENTY-FOURTH CAUSE OF ACTION**
**(Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*)**
**on Behalf of All Plaintiffs**

315.     Ford incorporates its responses herein to paragraphs 1–314. Responding further, as acknowledged in the Court's July 24, 2017 Order, Plaintiffs' Magnuson-Moss Warranty Act claim was dismissed by the Court in its November 12, 2015 Order, therefore no response is required to paragraphs 315–323.

316.     Plaintiffs' Magnuson-Moss Warranty Act claim was dismissed by the Court, therefore no response is required.

317.     Plaintiffs' Magnuson-Moss Warranty Act claim was dismissed by the Court, therefore no response is required.

318.     Plaintiffs' Magnuson-Moss Warranty Act claim was dismissed by the Court, therefore no response is required.

319.     Plaintiffs' Magnuson-Moss Warranty Act claim was dismissed by the Court, therefore no response is required.

320.     Plaintiffs' Magnuson-Moss Warranty Act claim was dismissed by the Court, therefore no response is required.

321.     Plaintiffs' Magnuson-Moss Warranty Act claim was dismissed by the Court, therefore no response is required.

322.     Plaintiffs' Magnuson-Moss Warranty Act claim was dismissed by the Court, therefore no response is required.

323.     Plaintiffs' Magnuson-Moss Warranty Act claim was dismissed by the Court, therefore no response is required.

## TWENTY-FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

**on Behalf of All Plaintiffs**

324.    Ford incorporates its responses herein to paragraphs 1–323.  Responding further, as a result of the Court's July 24, 2017 Order, Plaintiffs' unjust enrichment claims under the common law of states other than Wisconsin were dismissed.  To the extent Plaintiffs assert unjust enrichment claims based on the laws of states other than Wisconsin, no response is required.  Ford incorporates the preceding sentences into its responses to all of Plaintiffs' allegations concerning unjust enrichment claims brought "on Behalf of All Plaintiffs."

325.    Ford denies the allegations in this paragraph.

326.    Ford denies the allegations in this paragraph.

327.    Ford denies the allegations in this paragraph.

328.    Ford denies the allegations in this paragraph.

## DEMAND FOR JURY TRIAL

Ford Motor Company, by and through its attorneys, hereby acknowledges that Plaintiff demands a trial by jury.  Should Plaintiff rescind or otherwise alter its demand, Ford hereby demands a trial by jury of all issues so triable.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

1.      The claims of Plaintiffs and the putative class are barred for failure to state a claim on which relief can be granted.

2.      As defined in the Second Amended Class Action Complaint, the putative class includes individuals and entities who did not see or rely on the Hybrid Games video.

3.      Plaintiffs' alleged interpretation of the Hybrid Games video is unreasonable.

4.      The alleged misrepresentations are not actionable because they are not false or misleading.

5.      Any Plaintiff or putative class member who received a settlement or payment from Ford as a result of the alleged fuel economy misrepresentations, as well as those who did not incur any out of pocket costs relating to the alleged misrepresentation, are barred from any recovery by the doctrine of accord and satisfaction.

6.      The claims of Plaintiffs and the putative class are barred by the doctrine of res judicata.  More specifically, any Plaintiffs or putative class member who previously brought a lawsuit on the basis of the alleged fuel economy misrepresentations, and which resulted in a final judgment on the merits, is barred from re-litigating his or her claims in this case.

7.      Plaintiffs' claims are preempted because the alleged fraudulent advertisements contain the federally mandated disclaimers, i.e., "EPA-estimated 47 city/47 hwy/47 combined MPG. Actual mileage will vary."

8.      Ford did not sell or lease any of the subject vehicles directly to Plaintiffs or the putative class.  Thus, to the extent applicable under state law, the claims of Plaintiffs and the putative class are barred by lack of privity.

9.      All of the vehicles in the purported class and subclasses were sold or leased to their initial purchaser with the New Vehicle Limited Warranty provided by Ford, which contains a dispute resolution provision.

10.     The alleged poor fuel economy experienced by Plaintiffs is a result of the negligence, fault, carelessness, misuse, or abuse of other persons or entities for whom Ford is not responsible.  Depending on the applicable state law, any recovery by Plaintiff or the putative class is barred in full, or is diminished in proportion to the amount of negligence, fault, carelessness, misuse, or abuse attributable to other persons or entities.

11.     The claims of Plaintiffs or some members of the proposed class and subclasses are barred by the applicable statutes of limitation.

12.     The claims of Plaintiffs and members of the proposed class are barred, in whole or in part, because they failed to mitigate damages and/or took unreasonable, unnecessary, and/or unduly expensive actions in purported mitigation.

13.     The Court lacks subject matter jurisdiction because members of the purported class and subclasses may have vehicle lease agreements that contain a mandatory dispute resolution provision.

14.     Because all New York Plaintiffs have been dismissed, the Court lacks personal jurisdiction over Ford for purposes of trial.

15.     Ford denies all allegations not expressly admitted and specifically reserves all affirmative or other defenses that it may have against the proposed class and subclass.  It is not

necessary at this time for Ford to delineate such defenses against the proposed class and subclass because no class has been certified and the putative class members are not parties to this litigation.

16.    The claims of Plaintiffs or some members of the purported class and subclass are barred, in whole or in part, by the Commerce Clause of the United States Constitution because they purport to regulate interstate commerce and impermissibly place an undue burden on interstate commerce.

17.    Plaintiffs and proposed class and subclass members received all or substantially all of the benefit from the vehicles that they hoped and intended to receive, and, to that extent, any damages and/or restitution that Plaintiffs might be entitled to recover from Ford must be correspondingly reduced.

18.    Plaintiffs' proposed class should not be certified because it does not meet the requirements of Rule 23(a) and (b) of the Federal Rule of Civil Procedure.

19.    Ford reserves the right to assert additional affirmative and other defenses as may be established by the evidence in this case.

Wherefore, Ford prays as follows:

1.    that Plaintiffs takes nothing by way of their Second Amended Class Action Complaint;

2.    that Defendant be awarded costs of suit;

3.    that Defendant be awarded reasonable attorneys' fees; and

4.    for such other and further relief as the Court deems just and proper.

Dated:  October 30, 2017

                        Respectfully submitted,

        By:    /s/ Peter J. Fazio (PJF 1211)
                        Peter Joseph Fazio
                        AARONSON RAPPAPORT FEINSTEIN &
                        DEUTSCH, LLP
                        600 Third Avenue
                        New York, NY 10016
                        212-593-5458


                        John M. Thomas (admitted pro hac vice)
                        David M. George (admitted pro hac vice)
                        DYKEMA GOSSETT PLLC
                        2723 S. State St., Ste. 400
                        Ann Arbor, MI 48104
                        734-214-7660 (Phone)
                        734-214-7696 (Fax)
                        jthomas@dykema.com
                        klenart@dykema.com
                        dgeorge@dykema.com

                        Paul L. Nystrom (admitted pro hac vice)
                        DYKEMA GOSSETT PLLC
                        39577 Woodward Avenue, Suite 300
                        Bloomfield Hills, MI 48304
                        248-203-0855


                        Attorneys for Defendant
                        Ford Motor Company